F I L E D
United States Court of Appeals
Tenth Circuit

JAN 22 2001

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

FEDERAL TRADE COMMISSION,

      Plaintiff-Counter-
      Defendant - Appellee,

v.

JAY H. PETERSON, individually
and as an officer of Ads Across
America, Inc.,

      Defendant - Appellant,

U.S. HOTLINE, INC., doing business
as U.S. Car Buyers Alliance, doing
business as U.S. Publishers
Advocates, doing business as U.S.
Job Finders; ADS ACROSS
AMERICA, INC.; KALEIDOSCOPE
HOLDING CORPORATION,

      Defendants-Counter-
      Claimant-Third-Party-
      Plaintiffs-Appellees,

_____

BRUCE R. DIXON; MICHAEL
MARTIN, doing business as Martin
Print Services; EAST BAY
GRAPHICS,

      Claimants,

    and

Nos. 99-4190, 00-4050
(D.C. No. 93-CV-444-B)
(D. Utah)

UNITED STATES OF AMERICA;
UTAH COUNTY; INTERNAL
REVENUE SERVICE,

      Claimants - Appellees,

HERSCHEL J. SAPERSTEIN,

      Trustee - Appellee.

---

**ORDER AND JUDGMENT**  *

---

Before **BALDOCK** , **KELLY** , and **HENRY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

### Background

These two appeals arise from a district court action brought by the FTC against Jay Peterson and several of his corporations, alleging deceptive practices in violation of the Federal Trade Commission Act. A temporary restraining order

---

*    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

was initially issued to freeze the corporations' assets and then, a month later, the parties stipulated to a preliminary injunction and the appointment of an equity receiver. Shortly thereafter, Mr. Peterson filed for bankruptcy. [1] In August 1995, the parties agreed to a settlement that encompassed not only the FTC's claims, but also those of the Internal Revenue Service, the Utah State Tax Commission, and several classes of present and future commercial claimants (the agreement set out notice and refund procedures for defendants' customers). The receiver remained in place to administer the agreement, which was formally approved by the district court handling these FTC actions and the bankruptcy court handling the Peterson bankruptcy.

The receiver's administration of the agreement, overseen by a magistrate judge, continued for several years. In late 1998, a dispute arose over payment of certain claims against the receivership estate. The magistrate judge ordered the receiver to pay most of the claims. Mr. Peterson, who retains an interest in receivership assets, if any, left over when administration is complete, filed an objection, along with a motion to wind up the receivership. On July 12, 1999, the district court affirmed in part and reversed in part the magistrate judge's decision

---

[1] The corporations also filed bankruptcy proceedings, but since the property and claims therein would have been the same as those already subject to the receivership estate, those proceedings were abated from the outset by the district court. Mr. Peterson's personal bankruptcy, however, was allowed to proceed.

regarding payment of the claims. The court denied the motion to wind up the receivership as superfluous: "The receivership appears to be near completion, and the wind-up appears to be proceeding according to schedule. Therefore, rather than order such a wind-up, the Court will allow the wind-up to proceed under the direction of the Magistrate Judge as scheduled." R. doc. 730 at 3. Mr. Peterson appealed (No. 99-4190) from that order on September 7, 1999.

Thereafter, other disputes arose concerning tax withholdings from receivership estate distributions as well as approval of various professional fees to be paid by the estate. In conjunction with objections regarding these issues, Mr. Peterson re-urged his motion to wind up the receivership. He filed a second appeal (No. 00-4050) from the district court's adverse rulings on these matters. For reasons explained below, we conclude that we lack jurisdiction to review any of the rulings challenged herein by Mr. Peterson. We therefore dismiss these appeals.

### Jurisdictional Analysis

A final judgment has not been entered in the receivership action. Thus, if we have jurisdiction over either of Mr. Peterson's appeals, it must be by virtue of 28 U.S.C. § 1292(a)(2), which permits appellate review of "[i]nterlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of

-4-

property." For purposes of § 1292(a)(2), these two appeals are functionally the same, as Mr. Peterson acknowledges. Both involve various objections to the conduct of the receivership, coupled with an unsuccessful request to wind up the receivership. The receiver contends we lack jurisdiction over either aspect of the appeals. The language of the statute, pertinent case law, and common sense support his contention.

1. **Conduct of the Receivership**

The statute expressly permits appeal from orders " *refusing . . . to take steps* to accomplish the purposes [of the receivership]." It says nothing about appellate review with respect to *steps actually taken* –and, given the enormous potential for disruptive piecemeal appeals in this context, it seems reasonable for Congress to have granted a right of immediate review when there has been a complete failure to act in furtherance of the receivership, but not to have burdened the appellate courts with ongoing supervision of every action a receiver might be ordered to take. As the Ninth Circuit has concluded, "the narrow interpretation of the statute . . . ., restricting it to orders refusing to direct actions, makes good sense." *SEC v. Am. Principals Holdings, Inc.* , 817 F.2d 1349, 1350 (9th Cir. 1987). With one early and unexplained aberration, the other circuits have also followed this view. *See, e.g.* , *SEC v. Black* , 163 F.3d 188, 195 (3d Cir. 1998); *State St. Bank & Trust Co. v. Brockrim, Inc.* , 87 F.3d 1487, 1490-91 (1st Cir. 1996); *SEC v.*

*Am. Bd. of Trade, Inc.*, 829 F.2d 341, 344 (2d Cir. 1987). *Contra United States v. "A" Mfg. Co.*, 541 F.2d 504, 505-06 (5th Cir. 1976). We adopt this view as well, which leaves Mr. Peterson's wind-up requests as the only matters on which we could potentially base our jurisdiction.

2. <u>Requests to Wind-up the Receivership</u>

Mr. Peterson is on somewhat firmer jurisdictional ground when it comes to the denial of his requests for wind-up, but, as the receiver points out, unique circumstances present here undermine that aspect of the appeals as well. On the face of it--divorced from the procedural context and the district court's expressed rationale--the denial of such requests would certainly appear to implicate the terms of the statute. However, it is essential to consider the real substance and effect of the decision over which we are asked to exercise interlocutory review. *Cf., e.g.*, *Illinois ex rel. Hartigan v. Peters*, 861 F.2d 164, 165 (7th Cir. 1988) (looking to "nature of the order" appealed from in applying § 1292(a)(2)). The district court did not oppose or forestall the wind-up process; on the contrary, the court acknowledged that wind-up of the receivership was already in progress under the magistrate judge's supervision and indicated it did not wish to interfere. In essence, then, Mr. Peterson seeks to equate a refusal to interrupt and replace one ongoing wind-up with another with a refusal to order any wind-up at all. He

has not cited any authority for that critical point, nor has he referred us to any case law invoking § 1292(a)(2) to review a comparable ruling. [2]

Plainly, Mr. Peterson was not satisfied with the manner in which the receivership was proceeding during its wind-up under the supervision of the magistrate judge. However, objections in this regard, challenging the particular *conduct* of the receivership, fall on the non-appealable side of the distinction noted above between taking action with which a party disagrees and failing to take action at all. We recognize that, at some point, a wind-up unduly protracted might be the equivalent of a wind-up effectively denied. *Cf. United States v. Sylacauga Props., Inc.*, 323 F.2d 487, 489-91 (5th Cir. 1963) (deeming sixth, indefinite continuance of receivership the equivalent of a refusal to wind-up and permitting appeal under § 1292(a)(2)). However, we are not faced with anything like the egregious circumstances cited in favor of the interlocutory appeal in *Sylacauga.* Indeed, the receiver here issued his final report, anticipating the straightforward completion of the last few details of the receivership, before the second appeal was even taken. Ironically, these appeals and Mr. Peterson's

---

[2]     Further, to the extent Mr. Peterson sought wind-up of the receivership because "[h]e thinks the receiver should never have been appointed," his request constituted, rather, a motion to vacate the receivership, the denial of which is clearly not within the scope of § 1292(a)(2). *Peters*, 861 F.2d at 165-66.

-7-

underlying claim disputes are primary obstacles to completion of the wind-up he seeks.

In sum, we conclude that the district court did not "refus[e] . . . to wind up [the] receivership" within the meaning of § 1292(a)(2). Accordingly, we lack jurisdiction over any of the matters for which review is sought.

The appeals are DISMISSED.

Entered for the Court


Bobby R. Baldock
Circuit Judge