# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————————

No. 13-10119

————————

NETSPHERE, INCORPORATED, ET AL.,

United States Court of Appeals
Fifth Circuit

**FILED**

August 14, 2015

Lyle W. Cayce
Clerk

Plaintiffs

v.

JEFFREY BARON,

Defendant - Appellant

QUANTEC L.L.C.; NOVO POINT, L.L.C.,

Movants - Appellants

v.

PETER S. VOGEL,

Appellee

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

————————

No. 13-10696

————————

NETSPHERE, INCORPORATED, ET AL.,

Plaintiffs

v.

JEFFREY BARON,

Defendant - Appellant

Nos. 13-10119 & 13-10696

QUANTEC L.L.C.; NOVO POINT, L.L.C.,

Movants - Appellants

v.

GARDERE WYNNE SEWELL, L.L.P.; PETER S. VOGEL,

Appellees

Appeals from the United States District Court
for the Northern District of Texas

Before JOLLY, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

As a general rule, the courts of appeals have jurisdiction only over the final decisions of the district courts. There are certain exceptions and qualifications to that principle, however. In this case we must decide whether any of them allow us to review several district court orders which, pursuant to the mandate of an earlier decision of our court, awarded fees to a receiver before final judgment had been entered. Concluding that none apply, we dismiss for want of appellate jurisdiction.

I.

We set out the tangled factual and procedural history of this long-running case in our earlier opinion.[1] We summarize briefly now.

This case began back in the spring of 2009, as a contractual dispute between Netsphere, Inc., and Jeffrey Baron.[2] As the litigation ensued, one of Baron's companies, Ondova Limited Company, declared bankruptcy,

---

[1] *See Netsphere, Inc.* v. *Baron,* 703 F.3d 296 (5th Cir. 2012).

[2] *See id.* at 302.

2

automatically staying the district court action.  During this stage of the case, as in earlier proceedings, Baron repeatedly hired and fired his lawyers.[3]  "The bankruptcy creditors and Ondova eventually agreed to a settlement, but Baron continued to hire new lawyers.  Many of the lawyers claimed they had not been paid and began to file claims for legal fees in the bankruptcy proceeding."[4]  As proceedings continued, both the bankruptcy court and the bankruptcy trustee became increasingly concerned over Baron's failure to pay his current or former lawyers.[5]  Eventually, on the recommendation of the bankruptcy court, the district court appointed Peter S. Vogel as receiver over Baron.[6]

Baron appealed the district court's order appointing the receiver.    In *Netsphere* v. *Baron, Inc.* ("*Netsphere I*") we reversed, holding that the district court had "no authority to . . . establish[] a receivership" in order "to control Baron's hiring, firing, and non-payment of numerous attorneys."[7]  We next turned to the question of who should bear the costs expended by the improper receivership.  We held that our "precedents establish that equity controls when addressing the costs created by an improper receivership."[8]  Because "the record support[ed] that the circumstances that led to the appointment of a receiver were primarily of Baron's own making," we ruled that "charging the current receivership fund for reasonable receivership expenses, without allowing any additional assets to be sold, is an equitable solution."[9]  On

---

[3] *See id.* at 303.  At one point the bankruptcy trustee's attorney "presented a chart identifying 45 lawyers whom Baron had not paid." *Id.*

[4] *Id.*

[5] *Id.* at 304.

[6] *Id.*

[7] *Id.* at 305.

[8] *Id.* at 313.

[9] *Id.*  "We also conclude[d] that everything subject to the receivership other than cash currently in the receivership, which Baron assert[ed] in a November 26, 2012 motion amounts to $1.6 million, should be expeditiously released to Baron under a schedule to be determined by the district court for winding up the receivership. The new determination by the district court of reasonable fees and expenses to be paid to the receiver, should the amount

Nos. 13-10119 & 13-10696

remand, in addition to awarding new fees, we also ordered the district court to reconsider all receivership fees and expenses it had previously ordered to be paid.  We reasoned that these "[f]ees already paid were calculated on the basis that the receivership was proper" but "[i]n light of our ruling that the receivership was improper, equity may well require the fees to be discounted meaningfully from what would have been reasonable under a proper receivership."[10]

Before the *Netsphere I* mandate issued, the district court entered several orders approving interim fee applications submitted by the receiver and its counsel.  After the mandate issued, and the case was remanded, the district court then entered an order reconsidering the fees it had previously awarded to the receiver, its counsel, and the Ondova bankruptcy trustee.  It also authorized new payments to the receiver and to one of its counsel, Dykema Gossett PLLC.

These appeals of the various fee orders follow.[11]

II.

Both sides implore us to decide this appeal.  While we sympathize with their desire for resolution, we lack the power to do so.

Our appellate jurisdiction is normally limited to "final decisions of the district courts of the United States."[12]  These decisions "end[] the litigation on

---

be set at more than has already been paid, may be paid from the $1.6 million. To the extent the cash on hand is insufficient to satisfy fully what is determined to be the reasonable charges by the receiver and his attorneys, those charges will go unpaid. No further sales of domain names or other assets are authorized." *Id.* at 313-14.

[10] *Id.* at 313.  In a subsequent order, we clarified that "our opinion did not dissolve the receivership immediately," but that we had "ordered a remand for the expeditious winding up of the receivership."  That process was to be managed by the district court "as quickly as possible."  Order, at *1, No. 10-11202 (5th Cir. Dec. 31, 2012).

[11] Appeal No. 13-10119 addresses six interim fee orders the district court awarded before the *Netsphere I* mandate issued.  Appeal No. 13-10696 addresses the fee award issued in response to the *Netsphere I* mandate.

[12] 28 U.S.C. § 1291.

4

the merits and leave[] nothing for the court to do but execute the judgment."[13] That is not what we have here. No final judgment has been entered and the underlying breach of contract dispute that formed the original basis for this litigation remains undecided. Moreover, even within the context of the receivership, the district court's orders merely authorizes certain cash payments to the receivership and its counsel; they do not purport to enter a final judgment winding-up or terminating the receivership. Indeed, it was not until two years after the orders in this case were issued that the district court finally entered an order directing the termination of the receivership upon the payment of certain court-approved fees and expenses.[14] That order has since been appealed and will be addressed in the normal course by another panel of our court.[15]

There are two potential avenues for appellate jurisdiction absent a final decision of the district court: one based in statute, one in federal common law. Neither has purchase in this case.

### A.

In 28 U.S.C. § 1292(a)(2), Congress granted a limited right to appellate review of certain interlocutory orders related to receivers, providing:

> [T]he courts of appeals shall have jurisdiction of appeals from: [i]nterlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property.[16]

It is undisputed that the challenged fee orders are not "orders appointing receivers." Nor did the district court "refus[e] orders to wind up receiverships." Just the opposite, in fact: the fee orders were issued as a necessary step to

---

[13] *Catlin* v. *United States*, 324 U.S. 229, 233 (1945).
[14] *See* U.S.D.C. No. 2:09-cv-009880L, ECF No. 1447 (N.D. Tex. Mar. 27, 2015).
[15] *See* U.S.C.A. Case No. 15-10341 (5th Cir.).
[16] 28 U.S.C. § 1292(a)(2).

comply with our court's mandate that receivership fees be awarded and the receivership wound up.[17]

The closer question, however, is whether the phrase "take steps to accomplish the purposes thereof" vests us with jurisdiction to review a fee order issued in compliance with an earlier appellate directive to wind-up the receivership. We conclude that it does not.

Turning first to the text of section 1292(a)(2), the statute grants us jurisdiction only over "orders . . . refusing orders to wind up receiverships *or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property.*"[18] While not a model of clarity, seen in context, there are two ways to read these words. One "interpret[s] this provision as permitting appeals from orders 'to take steps to accomplish the purposes [of winding up receiverships],'" and the other constructs the language to "permit[] appeals only from orders 'refusing . . . to take steps to accomplish the purposes of [winding up receiverships].'"[19] We agree with the Ninth Circuit that the latter construction "requires less grammatical torture of the statute" than the former.[20] To reach the latter result, we interpret the verb phrase "refusing orders" to modify both the infinitive phrase "to wind up receiverships" and the infinitive phrase "to take steps to accomplish." The parallel structure of both infinitive phrases suggest that is a reasonable outcome.[21] To reach the opposite result, however, we must replace "to take steps" with "taking steps,"

---

[17] *See Netsphere, Inc.* v. *Baron*, 703 F.3d 296, 315 (5th Cir. 2012).

[18] 28 U.S.C. § 1292(a)(2) (emphasis added).

[19] *S.E.C.* v. *Am. Principals Holdings, Inc.*, 817 F.2d 1349, 1350 (9th Cir. 1987) (brackets original) (quoting 28 U.S.C. § 1292(a)(2)).

[20] *Id.*

[21] Under this reading, we would interpret the provision as: "the courts of appeals shall have jurisdiction of appeals from: [i]nterlocutory orders (1) appointing receivers, or (2) refusing orders (a) to wind up receiverships or (b) to take steps to accomplish the purposes [of winding up receiverships]."

a tense change that requires us to change the structure of the statute. Indeed, every circuit to squarely consider this question has reached the same result.[22]

Second, both our court and our sister circuits have long concluded that orders directing the payment of monies or the transfer of property to receivers and their professionals are unreviewable under section 1292(a)(2).[23] We have also refused to find jurisdiction over other orders issued in the course of a receivership, such as authorizing the execution of a lease by a receiver.[24] So have our sister circuits.[25]

Third, as a matter of policy, this interpretation makes good sense. As we recognized in *Warren* v. *Bergeron*,[26] the imposition of a receivership visits significant consequences: "To put a corporation or other entity into receivership is to wrest management and control from those entrusted by the owners, replacing them with a court-appointed trustee under court supervision. Because this action may cause great harm, Congress decided to make interlocutory orders appointing receivers appealable."[27] Orders entered

---

[22] *See, e.g.*, *United* States v. *Antiques Ltd. P'ship*, 760 F.3d 668, 671-72 (7th Cir. 2014); *F.T.C.* v. *Peterson*, 3 F. App'x 780, 782 (10th Cir. 2001) (unpublished); *SEC* v. *Black*, 163 F.3d 188, 195 (3d Cir. 1998); *State St. Bank & Trust Co.* v. *Brockrim, Inc.*, 87 F.3d 1487, 1490-91 (1st Cir. 1996); *Am. Principals Holdings*, 817 F.2d at 1351-52; *SEC* v. *Am Bd. of Trade, Inc.*, 829 F.2d 341, 344 (2d Cir. 1987).

[23] *See, e.g.*, *United States* v. *Beasley*, 558 F.2d 1200, 1200-01 (5th Cir. 1977); *Wark* v. *Spinuzzi*, 376 F.2d 827, 827 (5th Cir. 1967); *see also Black*, 163 F.3d at 195; *Am. Principals Holdings*, 817 F.2d at 1351.

[24] *See Belleair Hotel Co.* v. *Mabry*, 109 F.2d 390, 390-91 (5th Cir. 1940) ("An examination [of the predecessor statute to section 1292(a)(2)] discloses no authorization of an appeal from an order of the kind under review. It makes provision for appeals from interlocutory orders refusing to take appropriate steps to wind up a pending receivership, such as directing a sale or other disposal of the property, but we have no such order before us. In this case, the court has not refused an order to wind up the receivership or to take appropriate steps to that end.").

[25] *See, e.g.*, 16 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 3925 (3d ed. 2015) ("Orders entered in the course of a receivership administration generally are not appealable as such.") (collecting cases).

[26] 831 F.2d 101 (5th Cir. 1987).

[27] *Id.* at 103.

in the normal course of a receivership do not visit such consequences. Moreover, to conclude otherwise would mean that "virtually any order of the receiver within the scope of its jurisdiction would be potentially appealable."[28] Such a piecemeal approach to the appellate process would be disruptive and costly, both to the parties and the courts.[29]

While we believe this textual reading is best, there is one wrinkle, in the form of precedent from our court that could be read to come out the other way. In *United States* v. *"A" Manufacturing Co., Inc.*, we addressed the question of whether an order by a receiver confirming a sale after the fact is appealable under section 1292(a)(2).[30] We said it was, relying mainly on cases interpreting the final-judgment doctrine.[31] But in doing so, we used expansive language to describe section 1292(a)(2), saying it "provides for appeals from interlocutory orders which take steps to accomplish the purpose of receiverships such as directing the sale or disposal of property."[32] This language arguably conflicts with the reading of section 1292(a)(2) we have just put forward. Even still, we conclude that this language does not require us to hold we have jurisdiction to

---

[28] *Am. Principals Holdings*, 817 F.2d at 1351.

[29] *See, e.g.*, *United States* v. *Antiques Ltd. P'ship*, 760 F.3d 668, 671-72 (7th Cir. 2014) ("Parties in other cases have argued that this additional statutory language authorizes appeals from orders en route to winding up the receivership, which could include the sale order in the collection phase of this case. But that would both strain the statutory language and make anything the receiver did appealable immediately, which could flood the courts of appeals with interlocutory appeals."); *F.T.C.* v. *Peterson*, 3 F. App'x 780, 782 (10th Cir. 2001) ("The statute expressly permits appeal from orders 'refusing ... to take steps to accomplish the purposes [of the receivership].' It says nothing about appellate review with respect to steps actually taken—and, given the enormous potential for disruptive piecemeal appeals in this context, it seems reasonable for Congress to have granted a right of immediate review when there has been a complete failure to act in furtherance of the receivership, but not to have burdened the appellate courts with ongoing supervision of every action a receiver might be ordered to take.") (quoting 28 U.S.C. § 1292(a)(2)) (emphasis omitted).

[30] 541 F.2d 504, 505-06 (5th Cir. 1976).

[31] *See* 16 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 3925 n.29 (3d ed. 2015).

[32] *"A" Mfg. Co.*, 541 F.2d at 505-06.

review receivership fee orders issued as part of a court-mandated wind-down process.

First, that sentence in *"A" Manufacturing* is likely dicta. While "[i]t is well-established in this circuit that one panel of this Court may not overrule another," that rule does not apply to dicta.[33]

> A statement is dictum if it could have been deleted without seriously impairing the analytical foundations of the holding and being peripheral, may not have received the full and careful consideration of the court that uttered it. A statement is not dictum if it is necessary to the result or constitutes an explication of the governing rules of law.[34]

*"A" Manufacturing*'s holding – that orders confirming a sale are immediately appealable – was based on its interpretation of three cases that, pursuant to an entirely different jurisprudential line, had held that orders confirming sales were immediately appealable.[35] That holding was not based on the language of section 1292(a)(2),[36] and so *"A" Manufacturing*'s discussion of that provision could be removed without hindering the analytical basis of its conclusion.

Next, even assuming that *"A" Manufacturing's* statement that the courts of appeals have jurisdiction over "interlocutory orders which take steps to accomplish the purpose of receiverships" was holding, that decision conflicts with other, previous panel decisions that held such interlocutory orders were *not* appealable. In *Belleair Hotel Co.* v. *Mabry*,[37] a 1940 decision interpreting

---

[33] *United States* v. *Segura*, 747 F.3d 323, 328 (5th Cir. 2014) (quoting *Cent. Pines Land Co.* v. *United States*, 274 F.3d 881, 893 (5th Cir. 2001)).

[34] *Id.* (quoting *Int'l Truck & Engine Corp.* v. *Bray*, 372 F.3d 717, 721 (5th Cir. 2004)).

[35] *See "A" Mfg. Co.*, 541 F.2d at 506 ("These cases, spanning a century, clearly establish the rule that an interlocutory order commanding a sale, and one confirming a sale are appealable.").

[36] *See id.* at 505-06.

[37] 109 F.2d 390 (5th Cir. 1940).

Nos. 13-10119 & 13-10696

an earlier (but nearly identically phrased) version of section 1292(a)(2),[38] we concluded that a district court order authorizing a receiver to lease a piece of property was not immediately appealable.[39]  In doing so, we held that:

> An examination of the statute just cited discloses no authorization of an appeal from an order of the kind under review. It makes provision for appeals from interlocutory orders refusing to take appropriate steps to wind up a pending receivership, such as directing a sale or other disposal of the property, but we have no such order before us. In this case, the court has not refused an order to wind up the receivership or to take appropriate steps to that end.[40]

Similarly, in *Wark* v. *Spinuzzi*, which also predates *"A" Manufacturing*, we held that an interlocutory order "requiring appellants to turn over certain bonds to the Receiver" was not reviewable under section 1292(a)(2).[41]  The reasoning and holding of both cases, concluding that interlocutory orders which do not refuse orders to wind-down a receivership are not reviewable, conflict with *"A" Manufacturing*. "The rule in this circuit is that where two previous holdings or lines of precedent conflict the earlier opinion controls and is the binding precedent in this circuit."[42]

We hold that section 1292(a)(2) does not confer upon us appellate jurisdiction to review these fee orders.

## B.

A second potential avenue for appellate jurisdiction is the collateral order doctrine.  It does not avail.  This rule, which emerged from the Supreme

---

[38] *See* An Act to Amend the Judicial Code, § 129, 43 Stat. 936, 937 (1925) (current version at 28 U.S.C. § 1292(a)(2)) (providing for appellate jurisdiction when "an interlocutory order or decree is made appointing a receiver, or refusing an order to wind up a pending receivership or to take the appropriate steps to accomplish the purposes thereof, such as directing a sale or other disposal of property held thereunder.").

[39] *Belleair Hotel*, 109 F.2d at 390.

[40] *Id.* at 390-91.

[41] 376 F.2d 827, 827 (5th Cir. 1967).

[42] *Rios* v. *City of Del Rio, Tex.*, 444 F.3d 417, 425 n.8 (5th Cir. 2006).

Court's decision in *Cohen* v. *Beneficial Industrial Loan Corporation*,[43] "is best understood not as an exception to the final decision rule laid down by Congress in [28 U.S.C.] § 1291, but as a practical construction of it."[44] "To fall within *Cohen's* collateral order doctrine, 'an order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment.'"[45]

The fee orders satisfy the first two *Cohen* criteria, but not the third. Looking at the first factor, an order is "conclusive" if it is "not subject to later review or revision in the district court. The mere power to revisit an order, however, is insufficient to preclude a finding of conclusivity; it should be unlikely that the district court will revisit the order."[46] By this light, the district court's fee orders, which did not contemplate revision or modification, are conclusive. The second criteria is whether the fee orders "resolve[] an issue completely separate from the merits of the case,"[47] or whether they "generally involve[] considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'"[48] The orders are adequately separate: the underlying merits of the initial cause of action, a breach of contract dispute, are far removed from the propriety of the fee orders issued as part of a mandated receivership wind-up.

---

[43] 337 U.S. 541 (1949).

[44] *Will* v. *Hallock*, 546 U.S. 345, 349 (2006) (quoting *Digital Equip. Corp.* v. *Desktop Direct, Inc.*, 511 U.S. 864, 867 (1994)) (internal quotation marks omitted).

[45] *Henry* v. *Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 171 (5th Cir. 2009) (quoting *Coopers & Lybrand* v. *Livesay*, 437 U.S. 463, 468 (1978)).

[46] *Id.* at 173-74 (internal citations omitted).

[47] *Henry*, 556 F.3d at 174.

[48] *Coopers & Lybrand*, 437 U.S. at 469 (quoting *Mercantile Nat. Bank* v. *Langdeau*, 371 U.S. 555, 558 (1963)).

Nos. 13-10119 & 13-10696

It is on the reviewability element that the orders run aground, a requirement we have "held . . . to be the fundamental characteristic of the collateral order doctrine."[49]  Here, we look to whether it would be possible to review the fee orders after final judgment has been entered.[50]  We have not squarely considered the question of whether an order paying receiver fees is effectively reviewable after judgment.  We have, however, repeatedly considered whether a district court's interim (i.e., pre-final judgment) award of attorney's fees is reviewable under *Cohen*.  It is not, we have "consistently held," "because the fee award is effectively reviewable after final judgment on the merits of the case is entered."[51]  This logic applies equally to receiver fee awards.

While we have announced several exceptions to this pre-final judgment fee rule, none apply here.  In *Ruiz* v. *Estelle*, for example, we suggested that an award might be reviewable "if the defendant had alleged and proved that the mere payment of the fees would make them unrecoverable."[52]  "Such a situation might arise, for instance, if the fees were to be paid directly to a client in danger of becoming judgment-proof."[53]  It might also arise if awards "will be distributed to potentially thousands of claimants," leaving the defendant "no practical way of recovering these funds should it prevail."[54]  Here, by contrast,

---

[49] *Pan E. Exploration Co.* v. *Hufo Oils*, 798 F.2d 837, 840 (5th Cir. 1986); *see also Mitchell* v. *Forsyth*, 472 U.S. 511, 525 (1985) ("A major characteristic of the denial or granting of a claim appealable under *Cohen*'s 'collateral order' doctrine is that 'unless it can be reviewed before [the proceedings terminate], it can never be reviewed at all.'") (quoting *Stack* v. *Boyle*, 342 U.S. 1, 12 (1952) (opinion of Jackson, J.)) (brackets original).

[50] *See Campanioni* v. *Barr*, 962 F.2d 461, 463 (5th Cir.1992).

[51] *Id.*; *see also Shipes* v. *Trinity Indus., Inc.*, 883 F.2d 339, 344 (5th Cir. 1989); *Dardar* v. *Lafourche Realty Co., Inc.*, 849 F.2d 955, 959 (5th Cir. 1988); *Ruiz* v. *Estelle*, 609 F.2d 118, 119 (5th Cir. 1980).

[52] 609 F.2d at 119.

[53] *Campanioni*, 962 F.2d at 463.

[54] *In re Deepwater Horizon*, 732 F.3d 326, 332 n.3 (5th Cir. 2013); *see also S.E.C.* v. *Forex Asset Mgm't LLC*, 242 F.3d 325, 330 (5th Cir. 2001) (concluding that the *Cohen*

there are no allegations – and certainly no proof – that the receiver or its counsel would be unable to pay back the awards if Baron prevails.  Moreover, there are only a few interested parties; a far cry from the "thousands" of distributed claimants that would make practical recovery an impossibility.  We discussed another exception in *Walker* v. *United States Department of Housing and Urban Development*.[55]  There, we reviewed a fee award in the context of a desegregation consent decree, and held that given the "ongoing and possibly permanent nature of monitoring and preventing further changes to the City Consent Decree, it is unlikely that there ever will be a 'final judgment' for this court to review."[56]  In this case, while the litigation has lingered, we cannot conclude that it will continue on forever.

We hold that that collateral order doctrine does not provide a basis for appellate jurisdiction.

## III.

We DISMISS this appeal for want of appellate jurisdiction.

---

exception applied when "the assets from the receivership will be distributed, and likely unrecoverable, long before the action . . . is subject to appellate review").

[55] 99 F.3d 761 (5th Cir. 1996).

[56] *Id.* at 766.