**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SOLCO I, LLC; XSUN ENERGY, LLC;
N.P. JOHNSON FAMILY, L.P.;
SOLSTICE ENTERPRISES, INC.;
BLACK NIGHT ENTERPRISES, INC.;
STARLIGHT HOLDINGS, INC.,

    Defendants - Appellants,

and

RAPOWER-3, LLC; INTERNATIONAL
AUTOMATED SYSTEMS, INC.; LTB1,
LLC; R. GREGORY SHEPARD;
NELDON JOHNSON,

    Defendants.

------------------------------

R. WAYNE KLEIN,

    Receiver - Appellee.

No. 19-4089

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:15-CV-00828-DN-EJF)**
_____

Denver C. Snuffer, Jr. (Steven R. Paul, with him on the briefs) Nelson, Snuffer, Dahle & Poulsen, P.C., Sandy, Utah, for the Defendants – Appellants.

Michael S. Lehr, (Jonathan O. Hafen and Jeffery A. Balls, with him on the brief), Parr Brown Gee & Loveless, Salt Lake City, Utah, for the Receiver – Appellee.

_____

Before **MATHESON**, **KELLY**, and **PHILLIPS**, Circuit Judges.

_____

**MATHESON**, Circuit Judge.

_____

In 2015, the Government filed a civil action against Neldon Johnson, Gregory Shepard, and Mr. Johnson's three companies, RaPower-3 LLC ("RaPower"), International Automated Systems, Inc. ("IAS"), and LTB1, LLC ("LTB") (collectively, "Defendants"). The complaint alleged the Defendants promoted an abusive tax scheme in violation of 26 U.S.C. § 6700. Following a bench trial, the district court found for the Government, enjoined the Defendants from further promoting their scheme, and ordered disgorgement of ill-gotten gains.

In 2018, the district court appointed Appellee R. Wayne Klein as receiver ("Receiver") to take control of the Defendants' assets and to investigate whether their affiliated entities possessed proceeds from the illicit tax scheme. On the Receiver's recommendation, the court added 13 nonparty affiliated entities to the Receivership.

Six of the added entities ("Appellant Entities") appeal, arguing the district court included them in the Receivership without providing sufficient due process. We dismiss the appeal for lack of jurisdiction.

## I. BACKGROUND

### A. *Legal Background – Receivership*

A district court may appoint a receiver "to take the control, custody[,] or management of property . . . involved in litigation, to preserve the property, and to receive the rents, issues[,] and profits thereof pending the ultimate determination of such litigation." *Comm'r v. Owens*, 78 F.2d 768, 773 (10th Cir. 1935); *see* 12 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2981 (3d ed., Apr. 2020 update) ("Wright & Miller"). "When a district court creates a receivership, its focus is to safeguard the assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *S.E.C. v. Vescor Capital Corp.*, 599 F.3d 1189, 1194 (10th Cir. 2010) (quotations omitted).

Once appointed, a receiver is "vested with complete jurisdiction and control of [the] property with the right to take possession thereof." 28 U.S.C. § 754; *see* Wright & Miller § 2985 ("Section 754 of Title 28 gives the appointing court and the receiver exclusive jurisdiction and control over all of defendant's property in whatever district it may be situated . . . ."). A receiver "is an officer . . . of the court," not the parties' agent. *Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 896 (5th Cir. 2019) (quotations omitted).

### B. *Factual Background – The Abusive Tax Scheme*

Mr. Johnson and Mr. Shepard, through RaPower, IAS, and LTB, marketed to the public the opportunity to participate in a solar energy leasing program in

3

exchange for certain tax benefits. Mr. Johnson claimed to have invented a solar energy technology that used solar lenses placed on towers. Under the advertised scheme, customers would buy or lease a solar lens that purportedly would be installed at a site in Utah. Customers then would lease the lens to LTB to produce electricity. Defendants told customers they could claim personal tax credits and deductions because they would be in the "trade or business" of leasing solar energy. *See* 26 U.S.C. §§ 48, 167(a).

Defendants sold nearly 50,000 solar lenses and collected approximately $50 million in gross receipts. But contrary to their representations, they did not install most of the purchased solar lenses or use them to generate electricity. Meanwhile, customers claimed unwarranted tax deductions and credits on personal tax returns.[1]

## C. *Procedural Background*

### 1. **Complaint, Bench Trial, and Injunction**

In 2015, the Government sued the Defendants, alleging promotion of an abusive tax scheme in violation of 26 U.S.C. § 6700. The Government sought injunctive relief and disgorgement of ill-gotten gains. *See* 26 U.S.C. §§ 7402(a), 7408(a).

Following a 12-day bench trial, the district court found for the Government and enjoined the Defendants from making further false or fraudulent statements about

---

[1] For a more detailed account of the scheme, see *United States v. RaPower-3 LLC*, --- F.3d ---, 2020 WL 2844694, at *1-2 (10th Cir. 2020).

their solar energy technology and its supposed tax benefits.  *See United States v. RaPower-3*, *LLC*, 343 F. Supp. 3d 1115 (D. Utah 2018).  It also held the Defendants jointly and severally liable for $50,025,480 in equitable disgorgement.  The court entered a final judgment on these rulings.

2. **Receivership Order**

The Government moved to freeze the Defendants' assets and appoint a receiver.  The district court granted the motion, froze the Defendants' assets, and appointed Mr. Klein as Receiver ("Receivership Order").

The Receivership Order

- established the district court's "exclusive jurisdiction and possession of all [the Defendants'] assets" and any "assets proven to be proceeds of [the Defendants'] activities . . . in possession of any and all subsidiaries and affiliated entities," App. at 93;

- imposed a 120-day asset freeze on 12 of the Defendants' "subsidiaries and affiliated entities," including the six Appellant Entities here:  Solco I, LLC ("Solco"), XSun Energy, LLC ("XSun"), N.P. Johnson Family, L.P. ("NPJFLP"), Solstice Enterprises, Inc. ("Solstice"), Black Night Enterprises, Inc. ("Black Night"), and Starlight Holdings, Inc. ("Starlight"), *id*. at 93-95;

5

- directed the Receiver "to investigate all subsidiaries and affiliated entities . . . to determine whether the assets, property, property rights, or interests of the subsidiaries and affiliated entities derive from the abusive solar energy scheme at issue," *id*. at 94-95;

- gave the Receiver 120 days to notify the court "whether the Receivership should extend to any of the investigated subsidiaries or affiliated entities or specific property of those entities," *id*. at 95;

- dismissed "[t]he directors, officers, managers, employees, trustees, investment advisors, accountants, attorneys, and other agents of RaPower-3 LLC, IAS, and LTB[]," *id*. at 96; and

- provided that "[n]either [Mr.] Johnson nor [Mr.] Shepard, nor anyone acting on their behalf, shall make any court filings . . . on behalf of [any entities in the Receivership] other than in this case or in the pending appeal of an order in this case," *id*. at 97. The order said this provision would apply to any later-added affiliated entities as of "the date the [c]ourt agree[d] with the Receiver's recommendation" to add them to the Receivership. *Id*. at 96.

### 3. Appeal of Injunction, Disgorgement Award, and Receivership Order

The Defendants appealed the injunction and disgorgement award, invoking appellate jurisdiction under 28 U.S.C. § 1291. *See United States v. RaPower-3, LLC*, No. 18-4150. They argued the Government provided insufficient evidence of a fraudulent tax scheme and challenged the district court's disgorgement calculation. The Defendants separately appealed the Receivership Order, relying on 28 U.S.C. § 1292(a)(2) for this court's jurisdiction. *See United States v. RaPower-3, LLC*, No. 18-4119. They contended only that the district court violated Solco's and

6

XSun's due process rights by freezing their assets before affording them an opportunity to be heard. We consolidated the appeals.

On June 2, 2020, we affirmed the district court. *See United States v. RaPower-3 LLC*, --- F.3d ---, 2020 WL 2844694, at *6-12 (10th Cir.). We held that the Defendants failed to adequately raise their insufficient-evidence challenge on appeal, *id*. at *7, and that the disgorgement award was a reasonable approximation of the wrongful gains, *id*. at *7-10. We also concluded the Defendants lacked standing to challenge the Receivership Order on Solco's and XSun's behalf. *Id*. at *6.

4. **Receiver's Report and Motion to Expand Receivership**

On February 25, 2019, while the foregoing appeals were pending, the Receiver submitted a report to the district court recommending that the Receivership extend to the 12 entities identified in the Receivership Order, plus one more ("Affiliated Entities").

The report detailed each entity's relationship to the Defendants and the fraudulent scheme. As to the Appellant Entities, it stated:

- "Solco's only business was marketing lenses on behalf of IAS." Supp. App. at 152. Mr. Johnson managed Solco and signed contracts on its behalf. *Id*. The company is now delinquent. *Id*.

- XSun "had a contractual relationship with IAS to sell lenses for IAS." *Id*. at 154. Mr. Johnson is XSun's manager and sole decision maker. *Id*. XSun hired the Defendants' counsel, Nelson Snuffer, to appeal the disgorgement award and injunction on the Defendants' behalf. *Id*.

7

- "Solstice is the sole owner of XSun." *Id.* at 170. RaPower assigned 81.3% of its revenue to Solstice. *Id.* Solstice shares the same corporate office as RaPower and IAS and employs both Mr. Johnson and his relatives. *Id.* at 169-70.

- Starlight and Black Night owned the patents for Mr. Johnson's purported solar energy technology and licensed them to IAS and RaPower. *Id.* at 172-74. Mr. Johnson signed the licensing agreements on behalf of Starlight and Black Night and received royalties from both companies. *Id.* at 171, 173.

- NPJFLP "was the epicenter of fraudulent transfers and sham transactions" between Mr. Johnson, the other Defendants, and Mr. Johnson's relatives. *Id.* at 189-90; *see id.* at 165. Mr. Johnson transferred his solar energy technology patents, shares in IAS, and properties to NPJFLP for no consideration. *Id.* at 189-90. NPJFLP then fraudulently transferred assets to Starlight and Black Night. *Id.*

The Receiver acknowledged that "[b]ringing th[e]se entities into the Receivership . . . [wa]s not likely to result in any recovery of assets" because "many of the[m]" were "defunct and devoid of assets." *Id.* at 183. But he believed their inclusion was necessary to ensure that the Defendants could not continue perpetrating "what [the district court] ha[d] already declared as a massive fraud." *Id.* The Receiver, "incorporat[ing] . . . by reference" the factual findings in his report, moved to add the Affiliated Entities to the Receivership. *Id.* at 198-203.

Of the Affiliated Entities, only XSun, Solco, and Solstice objected to the Receiver's motion. They argued that adding nonparty entities to the Receivership would violate those entities' due process rights because they had not "been hailed into court" or given "the opportunity to defend themselves." *Id.* at 213. They also

8

contended the Receiver had not "show[n] that the[ir] property" was "ill-gotten."

*Id.* at 209 (emphasis omitted). But they did not dispute the Receiver's findings that

the Affiliated Entities and Defendants "have close associations," including "common

officers, directors, members, and managers" and "similar corporate purposes," *id.* at

182; conducted "numerous and substantial financial transactions" indicating

"interdependence," *id.*; and significantly commingled their assets, including the

patents behind Mr. Johnson's purported solar energy technology, *id.* at 182-83.

5. **Receivership Expansion Order**

The district court, without holding a hearing, granted the Receiver's motion to

add the Affiliated Entities to the Receivership ("Receivership Expansion Order"). It

found that Mr. Johnson created and controlled the Affiliated Entities, "commingled

[their] funds," "used their accounts to pay personal expenses," and transferred assets

"to and through them . . . to avoid creditors." App. at 142-43. It also found that

"[e]ach of the Affiliated Entities ha[d] received timely and sufficient notice of the

[Receiver's] [m]otion and [had] been afforded an adequate opportunity to be heard."

*Id.* at 141.

The Receivership Expansion Order granted the court "exclusive jurisdiction

and possession" of the Affiliated Entities' assets, *id.* at 144, and "dismissed" the

Affiliated Entities' "directors, officers, . . . attorneys, and other agents," *id.* at 145.

The order provided that "[n]o person holding or claiming any position of any sort

with any of the Affiliated Entities shall possess any authority to act by or on behalf of

any of the Affiliated Entities." *Id.* The order also subjected the Affiliated Entities to

9

the Receivership Order, including the provision regarding court filings on the Receivership entities' behalf "in this case or in the pending appeal of an order in this case." *Id.* at 97; *see id.* at 96.

The Receivership Expansion Order authorized "[a]ny person" to object within 21 days. *Id.* at 146.

6. **Objections to and Appeal of Receivership Expansion Order**

The six Appellant Entities—Solco, XSun, NPJFLP, Solstice, Black Night, and Starlight—objected to the Receivership Expansion Order on due process grounds. They argued they could not be held "liable for the [Defendants'] judgment" because they were not named in the lawsuit or afforded an opportunity to be heard. *Id.* at 149, 158.

The district court overruled their objections, explaining "[i]t ha[d] already been established that each of the objectors received timely and sufficient notice of the Receiver's [m]otion . . . and was afforded an adequate opportunity to be heard." *Id.* at 173 (quotations omitted).

The Appellant Entities timely appealed. In their docketing statement filed with this court, they said 28 U.S.C. § 1292(a), which authorizes appellate review of certain interlocutory orders, was not a basis for appellate jurisdiction.[2] We requested both parties to address appellate jurisdiction in their briefs.

---

[2] For appellate jurisdiction, the Appellant Entities erroneously cited 28 U.S.C. § 1345, which grants district courts original jurisdiction over actions commenced by the United States.

## II. **DISCUSSION**

After asserting the opposite in their docketing statement, the Appellant Entities now argue briefly that we have jurisdiction to hear this interlocutory appeal of the Receivership Expansion Order under 28 U.S.C. § 1292(a)(2). We disagree.

### A. *Additional Legal Background*

An appellant "bears the burden of establishing our appellate jurisdiction." *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1223 (10th Cir. 2019). Appellate jurisdiction generally is limited to "final decisions of the district courts." 28 U.S.C. § 1291; *see Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) (stating a decision is final under § 1291 if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment" (quotations omitted)). Congress, however, has granted appellate jurisdiction over certain district court decisions that do not satisfy § 1291's final judgment rule. *See* 28 U.S.C. § 1292.

Congress did so in 28 U.S.C. § 1292(a)(2), which authorizes courts of appeals to review "[i]nterlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property." "Statutes authorizing appeals are to be strictly construed." *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 579 (1987). "[T]his is particularly true with respect to statutes allowing interlocutory appeal." *DSMC Inc. v. Convera Corp.*, 349 F.3d 679, 683 (D.C. Cir. 2003), *abrogated on other grounds by Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009).

11

Courts narrowly construe § 1292(a)(2) "to permit appeals only from the three discrete categories of receivership orders specified in the statute, namely [1] orders appointing a receiver, [2] orders refusing to wind up a receivership, and [3] orders refusing to take steps to accomplish the purposes of winding up a receivership." *In re Pressman-Gutman Co.*, 459 F.3d 383, 393 (3d Cir. 2006) (quotations omitted);[3] *see also Netsphere, Inc. v. Baron*, 799 F.3d 327, 331-32 (5th Cir. 2015) (explaining that every circuit to address the issue has held § 1292(a)(2)'s "refusing orders" also modifies "to take steps to accomplish the purposes thereof" (quotations omitted)).

"Congress decided to make interlocutory orders appointing receivers appealable" under § 1292(a)(2) because they curtail property rights in a way that "may cause great harm." *Netsphere, Inc.*, 799 F.3d at 332 (quotations omitted); *see* Wright & Miller § 2983 ("The appointment of a receiver is considered to be an extraordinary remedy that should be employed with the utmost caution . . . .").

Congress, however, did not intend § 1292(a)(2) "to . . . burden[] the appellate courts with ongoing supervision of every action a receiver might be ordered to take." *F.T.C. v. Peterson*, 3 F. App'x 780, 782 (10th Cir. 2001) (unpublished); *see Netsphere, Inc.*, 799 F.3d at 332 (explaining that § 1292(a)(2) does not apply to

---

[3] *See, e.g.*, *State St. Bank & Tr. Co. v. Brockrim, Inc.*, 87 F.3d 1487, 1490-91 (1st Cir. 1996) (same); *United States v. Antiques Ltd. P'ship*, 760 F.3d 668, 672 (7th Cir. 2014) (same); *Can. Life Assurance Co. v. LaPeter*, 563 F.3d 837, 841 (9th Cir. 2009) (same).

"[o]rders entered in the normal course of a receivership" (quotations omitted)).[4]

Rather, § 1292(a)(2) creates a "narrow" exception to "the long-established policy against piecemeal appeals, which [courts] [are] not authorized to enlarge or extend." *Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478, 480 (1978) (construing appellate jurisdiction under § 1292(a)(1)); *see Hatten-Gonzales v. Hyde*, 579 F.3d 1159, 1165 (10th Cir. 2009) (stating "[§] 1292(a) was intended to carve out only a limited exception to the final-judgment rule . . . and the long-established policy against piecemeal appeals" (quotations omitted)).[5]

## B. *Analysis*

The Appellant Entities have not established appellate jurisdiction under § 1292(a)(2).  They contend the Receivership Expansion Order was an "[i]nterlocutory order[] appointing [a] receiver[]."  28 U.S.C. § 1292(a)(2).  But they offer no authority for that assertion, despite our request that they specifically brief appellate jurisdiction.  *See Raley v. Hyundai Motor Co.*, 642 F.3d 1271, 1275

---

[4] Although not precedential, we find the reasoning of the unpublished decisions cited in this opinion instructive.  *See* 10th Cir. R. 32.1 ("Unpublished decisions are not precedential, but may be cited for their persuasive value."); *see also* Fed. R. App. P. 32.1.

[5] *See also United States v. Philip Morris USA Inc.*, 840 F.3d 844, 849 (D.C. Cir. 2016) (construing "[§] 1292(a) narrowly in order to avoid the debilitating problems engendered by piecemeal appeals" (quotations omitted)); *Ali v. Quarterman*, 607 F.3d 1046, 1048 (5th Cir. 2010) ("Exceptions to the [final judgment] rule are strictly construed to prevent piecemeal appeals.").

13

(10th Cir. 2011) ("It is the appellant's burden, not ours, to conjure up possible theories to invoke our legal authority to hear her appeal.").

In its Receivership Order, the district court already had appointed a receiver over the Defendants' assets and the "assets proven to be proceeds of [the Defendants'] activities . . . in possession of any and all [of the Affiliated Entities]." App. at 93. And the Defendants, relying on § 1292(a)(2) for appellate jurisdiction, appealed the Receivership Order on behalf of two of the Appellant Entities, raising the same due process concerns that the Appellant Entities seek to raise here. This court said the Defendants lacked standing to challenge the order on the two Appellant Entities' behalf. *See RaPower-3 LLC*, 2020 WL 2844694, at *6. But the Appellant Entities could have intervened in the district court and joined the Defendants' § 1292(a)(2) appeal. *See* Fed. R. Civ. P. 24; 15A Wright & Miller, *Federal Practice and Procedure: Jurisdiction and Related Matters* § 3902.1 (2d. ed., Apr. 2020 update) (recognizing nonparty right to intervene in district court "for the sole purpose of appeal").[6] The Appellant Entities have not shown why the Receivership

---

[6] Courts have held a nonparty may intervene in an appeal in certain circumstances even without first intervening in the district court. *See, e.g.*, *S.E.C. v. Wencke*, 783 F.2d 829, 834 (9th Cir. 1986) (recognizing "nonparty's [standing] to appeal an order relating to a receivership" where it "participated in the district court's proceedings and had a legitimate interest in the outcome of the appeal" (quotations omitted)); *Aurelius Capital Partners, LP v. Republic of Arg.*, 584 F.3d 120, 127 (2d Cir. 2009) (recognizing exception to rule against nonparty appeal where "nonparty has an interest that is affected by the [district court's decision]" (quotations omitted)); *see also* Wright & Miller § 3902.1 (explaining "[n]onparties need not always go through a formal intervention procedure to achieve standing to appeal" (collecting cases)).

Expansion Order should provide them a second opportunity to challenge the Receiver's appointment.

Read narrowly and literally, § 1292(a)(2) permits an interlocutory challenge to the appointment of a receiver. It says nothing about an order adding an entity to a receivership. Nonetheless, the Appellant Entities argue that the Receivership Expansion Order "had the effect of appointing a receiver." Aplt. Br. at 1. They do not cite a single case that supports such an interpretation of § 1292(a)(2).[7] Without deciding whether this interpretation of § 1292(a)(2) may apply in other circumstances, we decline to apply it here.

First, the Receivership Order already gave the Receiver sole control over the proceeds of the scheme in possession of the Appellant Entities.[8]

Second, the Receivership Order identified the Appellant Entities and froze their assets for 120 days.

---

[7] *See United States v. Victoria-21*, 3 F.3d 571, 575 (2d Cir. 1993) (concluding appellants "failed to carry th[eir] burden" to show appellate jurisdiction under § 1292(a)(1), particularly when its application would "expand[] the jurisdiction of appellate courts over interlocutory orders in numerous . . . cases"); *Parker Livestock, LLC v. Okla. Nat'l Stock Yards Co*., 590 F. App'x 737, 742-43 (10th Cir. 2014) (unpublished) (concluding appellant "failed to meet its burden" to establish jurisdiction under § 1292(a)(1) where it relied on a factually distinguishable case and did not address subsequent cases that narrowed its ruling); *Gallatin Wildlife Ass'n v. U.S. Forest Serv*., 743 F. App'x 753, 755-57 (9th Cir. 2018) (unpublished) (dismissing appeal for lack of appellate jurisdiction where appellant did not "carr[y] its burden" to show the district court's partial grant of summary judgment was an interlocutory order subject to § 1292(a)(1)).

[8] The Appellant Entities therefore incorrectly assert that "the [R]eceiver had no authority over" them. Aplt. Reply Br. at 3.

Third, the Appellant Entities were on notice of the Receivership Order and could have attempted to join the Defendants' appeal under § 1292(a)(2) to challenge it.

Fourth, as the Receiver's Report found and the district court determined in entering the Receivership Expansion Order, the Appellant Entities were (1) deeply intertwined with the Defendants, including commingled funds; (2) directly or indirectly owned or controlled by Defendant RaPower's members;[9] and (3) integrally involved in the fraudulent scheme.

The Receivership Expansion Order may have added to the Receiver's control over the Appellant Entities' property. But the Appellant Entities have not overcome the final judgment rule's stricture against piecemeal appeals, *see New Mexico v. Trujillo*, 813 F.3d 1308, 1318 (10th Cir. 2016), our obligation to apply exceptions narrowly, *see Hatten-Gonzales*, 579 F.3d at 1165, and the circumstances of this case to justify the expansive application of § 1292(a)(2) they urge here.

---

[9] In the Defendants' appeal of the Receivership Order, their brief said in its "Corporate Disclosure Statement" that "RaPower-3, LLC is a Utah limited liability company. Its members consist of Randale P. Johnson, a Utah resident, LaGrand T. Johnson, a Utah resident, and Neldon P. Johnson, a Utah resident." Appellants' Opening Brief at i, *United States v. RaPower-3 LLC*, Nos. 18-4119 & 18-4150 (10th Cir. Jan. 22, 2019).

In this case, the Appellant Entities' "Corporate Disclosure Statement" reveals that LaGrand Johnson and Randale Johnson hold ownership interests in Black Night, NPJFLP, Solco, and Starlight. It also discloses that Randale Johnson and LaGrand Johnson manage Solco, and that XSun is owned by Solstice and managed by LaGrand Johnson. Aplt. Br. at i-ii.

16

The Appellant Entities contend that failure to apply § 1292(a)(2) would favor "form over substance" and "undermine the very purpose th[at] Congress intended." Aplt. Reply Br. at 3. But the original Receivership Order's grant of control to the Receiver over the Appellant Entities' assets, the Appellant Entities' forfeited opportunity to challenge the Receivership Order in the Defendants' § 1292(a)(2) appeal, and the tightly-integrated relationship between the Appellant Entities and the Defendants point more to this case being a prohibited piecemeal appeal rather than an appropriate § 1292(a)(2) exception to § 1291's final judgment rule. The Appellant Entities' limited briefing on appellate jurisdiction has not convinced us otherwise.

## III.  **CONCLUSION**

The Receivership Expansion Order is not immediately appealable because the Appellant Entities have not shown it falls within § 1292(a)(2)'s "narrow" exception to the final judgment rule. *Gardner*, 437 U.S. at 480. We dismiss the appeal for lack of jurisdiction.