# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 8, 2017

Lyle W. Cayce
Clerk

No. 16-50305

ERNESTO MARTINEZ, JR., The Law Offices of Ernesto Martinez, Jr., P.L.L.C.,

      Plaintiff - Appellee

v.

HELLMICH LAW GROUP, P.C.,

      Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:14-CV-769

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

PER CURIAM:*

Defendant Hellmich Law Group, P.C., ("HLG") appeals from the district court's denial of its motion to dismiss and motion for summary judgment, both of which were brought on the ground that HLG's communications are absolutely privileged under Texas law because they were made in connection with—and in anticipation of—a quasi-judicial proceeding. HLG argued that

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-50305

the tort claims of Plaintiff, Ernesto Martinez, Jr., all arose out of allegedly false and defamatory statements made to Martinez's clients in an effort to get them to hire HLG to bring an action against Martinez. The district court held that HLG had not shown it was entitled to the privilege defense under either the motion to dismiss standard or the summary judgment standard because HLG did not show its statements were made in connection with a judicial proceeding.[1] Because we find that the district court erred in its application of Texas law and that HLG is entitled to summary judgment of Martinez's claims, we REVERSE and REMAND.

## I.

Martinez filed this diversity action in August 2014, alleging that both HLG and Martinez's former client, Kennie Arriola,[2] contacted certain of Martinez's other clients "in an attempt to file a baseless and fraudulent claim against" Martinez. Martinez alleged that HLG directed communication with Martinez's clients in an attempt to interfere with their representation. Martinez attached an affidavit averring that he had received correspondence from HLG on August 8, 15, and 16, 2014 which indicated that HLG had contacted Martinez's clients and had been retained to initiate "litigation and/or arbitration" against Martinez. Martinez asserted that on August 11 he received phone calls from two separate clients who said that HLG had made attempts to solicit them into joining an action against Martinez, falsely stating

---

[1] More precisely, the district court referred the motion to dismiss and motion for summary judgment to the magistrate judge, who issued a report and recommendation in favor of Martinez. *Martinez v. Hellmich Law Gp.*, No. 5:14-CV-769 (W.D. Tex. July 8, 2015). The district court entered two orders adopting the report and recommendation. *Martinez v. Hellmich Law Gp*, No. 5:14-CV-769 (W.D. Tex. Aug. 6, 2015) (relating to another defendant); *Martinez v. Hellmich Law Gp*, No. 5:14-CV-769 (W.D. Tex. Feb. 17, 2016) (relating to HLG). Because the district court adopted the report and recommendation, we refer to it as the district court's reasoning.

[2] Martinez also brought claims against Arriola, though these were dismissed by the district court as subject to binding arbitration and are not at issue here.

No. 16-50305

that ten of Martinez's clients had ceased being represented by Martinez and joined an action against him. Martinez also claimed that another client reported being "hounded" by HLG. Martinez claimed that HLG's actions were tortious under Texas law, constituting interference with his contracts, conspiracy to interfere with a business relationship, business disparagement, and defamation.

HLG moved to dismiss and, in the alternative, for summary judgment, arguing that HLG was entitled to an absolute privilege against Martinez's claims because the statements giving rise to each were made in connection with the representation of existing clients and to prospective clients in connection with anticipated arbitration. Specifically, HLG claimed this matter arose out of its investigation of billing irregularities on behalf of two of Martinez's clients in a multi-party litigation called *Halprin v. FDIC*. In support of its motion for summary judgment, HLG submitted an affidavit from Arriola, who had been one of Martinez's *Halprin* clients. Arriola averred that he and Les Klingerman, another of Martinez's *Halprin* clients, retained HLG to investigate Martinez's billing practices and, "if necessary, [to] bring an arbitration action against [Martinez]."

Arriola stated that after HLG found irregularities in Martinez's billing records, Arriola and Klingerman communicated with many of Martinez's other *Halprin* clients, informing them that Klingerman and Arriola had retained HLG in connection with the overbilling and giving them HLG's contact information. HLG averred that it never initiated contact with Martinez's *Halprin* clients and that it only communicated with those individuals after they had contacted HLG or requested that HLG contact them, at which point HLG informed them of the merits of the potential overbilling arbitration. HLG argued that Martinez's complaint was sufficient to demonstrate that HLG's

3

statements were absolutely privileged and, in any case, HLG had submitted sufficient uncontroverted evidence to prove its entitlement to the privilege.

The district court denied HLG's motion to dismiss and its motion for summary judgment. The court reasoned that HLG's entitlement to the absolute privilege was not apparent from the face of the complaint because HLG did not represent any person in connection with the *Halprin* litigation and the statements at issue were made in connection with HLG's attempts to solicit new clients, and therefore could not have been "in furtherance of" the representation of an existing client. The district court found, with respect to Martinez's claims of tortious interference and conspiracy to interfere with a business relationship, that the court would have to determine whether HLG's statements were made in good faith anticipation that it would be filing a nonfrivolous action before determining whether HLG was entitled to assert its privilege defense and, thus, these claims could not be dismissed on the basis of the pleadings. The district court also denied HLG's motion for summary judgment, finding that HLG's proffered evidence did not show that its communications were made in relation to a judicial proceeding in which it participated as counsel. HLG timely appealed.[3]

---

[3] Although this court does not ordinarily have jurisdiction over appeals from non-final orders, under the collateral order doctrine, we may exercise appellate jurisdiction over a nonfinal order that "(1) conclusively determine[s] the disputed question, (2) resolve[s] an important issue completely separate from the merits of the action, and (3) [would] be effectively unreviewable on appeal from a final judgment." *Netsphere, Inc. v. Baron*, 799 F.3d 327, 334-35 (5th Cir. 2015) (quoting *Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 171 (5th Cir. 2009)). This court has held that because "Texas law regards its privilege for communications made in the context of judicial, quasi-judicial, or legislative proceedings as a complete immunity from suit, not a mere defense to liability," a defendant who asserts this privilege may "appeal the district court's rejection of its immunity claim as a collateral order under 28 U.S.C. § 1291." *Shanks v. AlliedSignal, Inc.*, 169 F.3d 988, 992 (5th Cir. 1999).

No. 16-50305

## II.

We review a district court's summary judgment decision de novo.[4] Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] When reviewing a summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[6]

## III.

Under Texas's judicial proceedings privilege,

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.[7]

This privilege "applies to out-of-court communications if the communication bears some relationship to the proceeding and is in furtherance of the attorney's representation."[8] In determining whether a communication is privileged, a "court must consider the entire communication in its context, and

---

[4] *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

[5] FED. R. CIV. P. 56(a).

[6] *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (per curiam) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (alteration in original)).

[7] *Russell v. Clark*, 620 S.W.2d 865, 869 (Tex. Civ. App. 1981) (quoting RESTATEMENT (SECOND) OF TORTS § 586 (AM. LAW INST. 1977)). While HLG insists that *Russell* was overturned by the Supreme Court of Texas's ruling in *Shell Oil Co. v. Writt*, 464 S.W.3d 650 (Tex. 2015), we do not find these cases to be in conflict with one another. *Shell* speaks to a witness's privilege against defamation suits, while *Russell* speaks to an attorney's privilege. The claim that *Russell* is "discredited" by its reliance on Restatement section 586, as opposed to section 588, is also incorrect as the allegedly "more expansive" section 588 mirrors section 586, but speaks to a witness's privilege. *See* RESTATEMENT (SECOND) OF TORTS § 588 ("A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding.").

[8] *Dall. Indep. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 238 (Tex. App. 2000); *see also Helfand v. Coane*, 12 S.W.3d 152, 157 (Tex. App. 2000); *Hill v. Herald-Post Publ'g Co.*, 877 S.W.2d 774, 782-84 (Tex. App. 1994), *rev'd in part on other grounds*, 891 S.W.2d 638 (Tex. 1994).

must extend the privilege to any statement that bears some relation to an existing or proposed judicial proceeding. All doubt should be resolved in favor of its relevancy."[9] This privilege applies to prospective judicial or quasi-judicial proceedings, so long as such proceeding was "a serious consideration at the time the communication was made."[10] Quasi-judicial proceedings include private arbitration.[11]

The Supreme Court of Texas has said that the judicial proceedings privilege can bar claims other than defamation where a plaintiff's damages "are basically defamation damages."[12] The "privilege is not limited to claims of libel or slander, and it should be applied to claims arising out of communications made in the course of judicial proceedings, regardless of the label placed on the claim."[13]

In support of its motion for summary judgment, HLG submitted: (1) an August 8, 2014 letter from HLG to Martinez; (2) an August 15, 2014 "Notice of Intent to File Arbitration Action" from HLG to Martinez; (3) an August 16, 2014 cease-and-desist letter from HLG to Martinez; (4) an affidavit from its principal, Christopher Hellmich; and (5) an affidavit from Arriola. Martinez submitted a motion in opposition reiterating the claims in the affidavit

---

[9] *Russell*, 620 S.W.2d at 870.

[10] *Shell*, 464 S.W.3d at 655; *see also*, *e.g.*, *Crain v. Smith*, 22 S.W.3d 58, 63 (Tex. App. 2000) (statements made in attorney's pre-complaint letter to a prospective defendant were absolutely privileged).

[11] *Henderson v. Wellmann*, 43 S.W.3d 591, 600 (Tex. App. 2001).

[12] *Bird v. W.C.W.*, 868 S.W.2d 767, 772 (Tex. 1994) (absolute privilege applied to negligence claim where plaintiff sought damages for injury to his reputation, public contempt, ridicule, loss of relationships, and loss of self-esteem).

[13] *Crain v. Unauthorized Practice of Law Comm. of Supreme Ct. of Tex.*, 11 S.W.3d 328, 335 (Tex. App. 1999). *See also Laub v. Pesikoff*, 979 S.W.2d 686, 691 (Tex. App. 1998) ("*Bird* makes it clear that, to avoid the circumvention of the policy behind the privilege, the privilege should be extended beyond defamation when the essence of a claim is damages that flow from communications made in the course of a judicial proceeding.").

attached to his complaint and attaching a verification page affirming that he had personal knowledge of each and every statement contained in the motion.

HLG's evidence, as well as Martinez's own submissions, demonstrate that the allegedly tortious statements at issue in this case were made in relation to a proposed arbitration and are therefore absolutely privileged under Texas law. Specifically, Hellmich's affidavit establishes that allegedly tortious speech concerned Martinez's billing practices, a matter HLG was actively investigating on behalf of Klingerman and Arriola. It also establishes that HLG did not initiate contact with any of Martinez's *Halprin* clients; rather, those clients contacted HLG or requested that HLG contact them after Klingerman and Arriola informed them of the proposed arbitration. Furthermore, Hellmich's affidavit establishes that all of Martinez's *Halprin* clients who spoke with HLG retained HLG to represent them in the arbitration action against Martinez, although one of them ultimately decided against pursuing the arbitration.

Arriola's affidavit establishes that HLG actually filed the arbitration on his behalf and on behalf of some of Martinez's other *Halprin* clients on November 29, 2014 and that the arbitration action resulted in a $250,000 award against Martinez. Martinez's submissions in the lower court confirm that the statements it alleges give rise to HLG's liability were made in connection with the proposed arbitration, as all the specific facts in Martinez's affidavit allege that HLG's communications with Martinez's *Halprin* clients were intended to convince them to join in the proposed arbitration proceeding against Martinez.

Martinez has not filed a brief in this court, and the summary judgment record shows no genuine dispute as to any of the above material facts. Accordingly, we conclude that the statements at issue are absolutely privileged under Texas law. At the time HLG made the statements, it is undisputed that

HLG already represented Klingerman and Arriola in connection with investigating the overbilling issue, and HLG made the statements in connection with the arbitration proceeding it contemplated filing on Klingerman and Arriola's behalf. HLG was privileged to discuss the merits of a planned quasi-judicial proceeding with parties similarly situated to its existing clients, the majority of whom later retained HLG and joined in the arbitration.[14] The fact that the arbitration had not been commenced at the time the allegedly tortious communications occurred is of no importance.[15] Thus, HLG has established that it is entitled to assert the judicial proceedings privilege as a full defense to Martinez's defamation claims.

We conclude the district court erred by analyzing each statement made by HLG to Martinez's *Halprin* clients in a vacuum, disregarding the fact that HLG already represented Klingerman and Arriola in connection with the proposed arbitration proceeding. In doing so, the district court incorrectly treated the statement as simply the solicitation of a new client, in which case it would not be clear whether Texas would extend the privilege to the communications.[16] Texas law requires us to view the statements at issue in

---

[14] *See Frazin v. Burleson, Pate & Gibson*, No. 05-92-00121-CV, 1992 WL 333325, at *2 (Tex. App. Nov. 10, 1992) (attorney's communications to agencies and local business organizations concerned with real estate business practices bore some relation to planned judicial proceeding and were in furtherance of representation where plaintiff was a realtor and thus "[s]ending the letter to those entities could favorably affect the actions . . . complained of for the benefit of [the] client or favorably affect settlement."); *Russell*, 620 S.W.2d at 870 ("All doubt should be resolved in favor of [a statement's] relevancy."); *see also Watson v. Kaminski*, 51 S.W.3d 825, 827-28 (Tex. App. 2001) (letter sent to third party concerning planned litigation was related to judicial proceeding and in furtherance of client's representation); *Hill*, 877 S.W.2d at 783-84 (statement made by attorney to reporter "affirming the allegations in his motion and brief and his belief that he could prove them" bore a substantial relationship to judicial proceedings and was made in furtherance of his representation of his client).

[15] *See*, *e.g.*, *Shell*, 464 S.W.3d at 655; *Russell*, 620 S.W.2d at 870.

[16] *See Rhodes Colleges, Inc. v. Johnson*, No. 3:10-CV-0031-D, 2012 WL 627273, at *6-7 (N.D. Tex. Feb. 27, 2012) (website soliciting new clients not "in furtherance" of existing clients' representation).

context and resolve any doubt in favor of the privilege.[17] In light of HLG's representation of Klingerman and Arriola and the proposed arbitration proceeding, we conclude that Texas law would apply the privilege in these circumstances.

Similarly, the district court erred to the extent it held that HLG was not entitled to the privilege because HLG did not represent any client in the *Halprin* litigation. Again, the relevant legal proceeding here is the proposed arbitration relating to Martinez's billing practices, a quasi-judicial proceeding sufficient to trigger the privilege under Texas law.[18]

In sum, we conclude that the district court erred in refusing to extend the privilege to HLG's communications made to Martinez's *Halprin* clients. Consequently, we also conclude that the district court erred in its remaining determinations. For instance, Martinez's tortious interference claim is based on HLG's communications with Martinez's *Halprin* clients urging them "to join in [HLG's] representation based on baseless and false claims," and Martinez's conspiracy to interfere with a business relationship claim is based on HLG's conspiracy with Arriola "to have all clients join the claim against" Martinez. Martinez does not allege any specific facts supporting these claims other than HLG's communications with his *Halprin* clients. These claims all arise out of communications HLG was privileged to make and are therefore barred for the same reasons as Martinez's defamation claims.[19]

Finally, the district court found, based on this court's ruling in *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1269 (5th Cir. 1991), that HLG had to demonstrate it had acted in good faith in order to assert

---

[17] *Russell*, 620 S.W.2d at 870

[18] *Henderson*, 43 S.W.3d at 600.

[19] *See Unauthorized Practice of Law Comm.*, 11 S.W.3d at 335; *Laub*, 979 S.W.2d at 691.

privilege with respect to Martinez's tortious interference and conspiracy claims. However, *International Shortstop* and the cases cited therein dealt with the privilege to interfere with a contract of another in the bona fide furtherance of one's own rights,[20] a privilege not asserted by HLG. Moreover, the district court only considered *International Shortstop* in the context of HLG's motion to dismiss and failed to consider evidence before it concerning this issue. In any event, we find HLG presented undisputed evidence of good faith in support of its motion for summary judgment, namely, evidence that HLG's communications concerned the merits of an arbitration action it had investigated and was contemplating filing. HLG also submitted undisputed evidence that it filed a meritorious arbitration action on behalf of some of Martinez's *Halprin* clients. Thus, to the extent *International Shortstop* imposes a good faith requirement applicable in this case, HLG has demonstrated that any threats to file an arbitration action were made in good faith.

For the foregoing reasons, we REVERSE the district court's order and REMAND for the district court to grant HLG's motion for summary judgment.

---

[20] *See* 939 F.2d at 1269.

10