RENDERED: MAY 27, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0562-MR

NEW ALBANY MAIN STREET
PROPERTIES, LLC D/B/A PORT OF
LOUISVILLE; GREGORY P.
CANTRELL; JOE TEGART; AND P.
RON SILER                                                                          APPELLANTS


APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE AUDRA J. ECKERLE, JUDGE
ACTION NO. 20-CI-006650


R. WAYNE STRATTON, CPA AND
JONES, NALE & MATTINGLY PLC                                      APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; COMBS AND JONES, JUDGES.

JONES, JUDGE: Appellants New Albany Main Street Properties, LLC d/b/a Port

of Louisville; Gregory P. Cantrell; Joe Tegart; and P. Ron Siler (collectively

"Appellants") appeal from the Jefferson Circuit Court's opinion and order entered

on April 14, 2021, dismissing their claims against Appellees R. Wayne Stratton,

CPA and the accounting firm, Jones, Nale & Mattingly PLC (collectively the "Appellees") pursuant to CR[1] 12.02(f). After a careful review of the record and the law, we affirm.

## I. BACKGROUND

New Albany Main Street Properties, LLC d/b/a Port of Louisville ("Port of Louisville") entered into a contract with Louisville and Jefferson County Riverport Authority ("Riverport") to lease several acres of land for the purpose of operating a public port on the Ohio River. The parties' relationship deteriorated over time. In June 2019, Riverport filed a civil action against Port of Louisville in Jefferson Circuit Court, Case No. 19-CI-003564, alleging that Port of Louisville breached the parties' lease agreement. Among other grounds, Riverport alleged that Port of Louisville failed to comply with applicable federal and state tax laws as required by the parties' lease agreement. Ultimately, the parties agreed to stay the circuit court action and arbitrate their dispute before John Hays pursuant to the rules of the American Arbitration Association.

In preparation for the arbitration, Riverport retained R. Wayne Stratton, a certified public accountant employed with the accounting firm of Jones, Nale & Mattingly PLC, to serve as an expert witness. Specifically, Riverport asked Stratton to review various financial documents provided by Port of

---

[1] Kentucky Rules of Civil Procedure.

Louisville and to provide his opinion as to whether Port of Louisville complied with the applicable tax laws. Riverport tendered Stratton's initial report to Port of Louisville in early December 2019, and it provided a supplemental report on December 18, 2019, the day before Stratton was scheduled to testify at the arbitration. In his reports, Stratton opined that Port of Louisville had underreported its revenue in excess of six million dollars over a four-year period. Stratton's opinion was predicated on his conclusion that hundreds of entries appearing in the financial documents produced by Port of Louisville represented checks received by the Port of Louisville that it failed to report as income. Stratton's testimony at arbitration was consistent with the opinions expressed in his written reports.

Port of Louisville vigorously maintained that Stratton's opinion was based on a flawed reading of its financial documents, and that it had not underreported its income. It explained that the entries, which Stratton classified as receipts, were actually disbursements made by Port of Louisville to other parties to pay for legitimate business expenses such as payroll and royalty fees. Port of Louisville engaged its own accounting expert, Rodefer Moss, to rebut Stratton's opinion that Port of Louisville underreported its income. Following consideration of Port of Louisville's explanation and prior to the case's being submitted to the

-3-

arbitrator for a decision, Riverport voluntarily withdrew Stratton's written opinions and his testimony related thereto.

Ultimately, the arbitrator concluded that Port of Louisville had not breached its lease agreement with Riverport. On or about October 8, 2020, the Jefferson Circuit Court entered a decree confirming the arbitrator's opinion in Port of Louisville's favor.[2] Approximately a month later, Port of Louisville and its members, Gregory P. Cantrell, Joe Tegart, and P. Ron Siler filed a civil complaint against Stratton and his accounting firm in Jefferson Circuit Court. Appellants' complaint asserted that Stratton and his accounting firm implicitly and falsely accused Port of Louisville of tax fraud and by so doing damaged its reputation and impugned the business integrity and ethics of its members. Appellants asserted two causes of action against Stratton and his accounting firm: (1) defamation, slander, libel, and business slander (hereinafter referred to collectively as "defamation claims"); and (2) professional malfeasance. They sought to recover both compensatory and punitive damages.

Appellees moved to dismiss both claims under CR 12.02(f), arguing that the defamation claim was barred by the judicial statements privilege and that Appellees owed no duty to Appellants upon which a claim of negligence or gross

---

[2] The decree was recently affirmed by this Court. *See Louisville and Jefferson County Riverport Authority v. New Albany Main Street Properties, LLC*, No. 2020-CA-1426-MR, 2022 WL 496003 (Ky. App. Feb. 18, 2022).

negligence could be based. In an opinion and order dated April 14, 2021, the circuit court granted Appellees' motion and dismissed both claims with prejudice. This appeal followed.

## II. STANDARD OF REVIEW

"A motion to dismiss for failure to state a claim upon which relief may be granted under CR 12.02(f) 'admits as true the material facts of the complaint.'" *Lawrence v. Bingham, Greenebaum, Doll, L.L.P.*, 567 S.W.3d 133, 137 (Ky. 2018) (quoting *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010)). "[T]he pleadings should be liberally construed in the light most favorable to the plaintiff, all allegations being taken as true." *Unifund CCR Partners v. Harrell*, 509 S.W.3d 25, 28 (Ky. 2017) (citations omitted). "A trial court should dismiss an action for failure to state a claim upon which relief may be granted only when 'it appears the pleading party would not be entitled to relief under any set of facts which could be proved[.]'" *Brown-Forman Corporation v. Miller*, 528 S.W.3d 886, 889 (Ky. 2017) (quoting *Pari-Mutuel Clerks' Union of Kentucky, Local 541, SEIU, AFL-CIO v. Kentucky Jockey Club*, 551 S.W.2d 801, 803 (Ky. 1977)). "Since a motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the issue de novo." *Fox*, 317 S.W.3d at 7 (footnote omitted).

### III. ANALYSIS

On appeal, Appellants argue: (1) Appellees' motion to dismiss was premature, and they should have been able to take discovery; (2) Appellees' defamatory statements were not made in a "judicial proceeding" and are, therefore, not privileged; (3) paid expert witnesses are not entitled to absolute immunity under the judicial statements privilege; and (4) Appellants asserted a valid cause of action for professional malfeasance. We address each argument in turn.

#### A. *The Circuit Court Was Not Required To Permit Discovery*

Appellants argue that the circuit court erred when it took up Appellees' CR 12.02(f) motion prior to any discovery having taken place. They explain that assessing their claims based solely on the allegations contained in their complaint without permitting them an opportunity to take discovery placed them in an "impossible position" since they were ethically limited to alleging facts within their knowledge. Appellants contend that, with the benefit of discovery, they *might* have been able to prove Appellees made additional defamatory statements about them outside of the arbitration process, meaning the judicial statements privilege would not apply. They assert that the existence of possible, additional statements means they did not fail to state a claim for relief, and that the circuit court should not have granted Appellees' motion to dismiss, which was predicated on the affirmative defense of judicial privilege.

"The requisite elements for a defamation claim are: (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 281-82 (Ky. 2014) (internal quotation marks and footnotes omitted). Particularly important to this appeal, "[i]t is the general rule that each communication of the same defamatory matter by the same defamer, whether to a new person or to the same person, *is a separate and distinct publication, for which a separate cause of action arises*." RESTATEMENT (SECOND) OF TORTS § 577A cmt. a (1977) (emphasis added).

The purpose of a lawsuit is for a party to vindicate an existing claim, not to engage in a fishing expedition to determine if additional, unpled claims exist. While a party opposing a motion for summary judgment is required to be given an adequate opportunity to take discovery, the same is not true when dealing with motions to dismiss for failure to state a claim. Rather, CR 12.02(f) serves as a vehicle through which a party can seek to "expediently terminate litigation" prior to discovery in cases where "[the] plaintiff would not be entitled to relief under any statement of facts which could be proved in support of the claim." *Seiller Waterman, LLC v. RLB Properties, Ltd.*, 610 S.W.3d 188, 195 (Ky. 2020) (internal

-7-

quotation marks and citation omitted). In fact, CR 12.02(f) requires such motions to be brought "before pleading if a further pleading is permitted." Requiring the circuit court to delay ruling on CR 12.02(f) motions pending discovery would effectively do away with such motions by converting them into summary judgment proceedings.

Appellees timely filed their motion to dismiss asserting that, even if the facts alleged by Appellants were true, they had failed to state a viable claim for either defamation or professional malfeasance. The "case [as presented to the circuit court] involve[d] an issue of pleadings, not proof." *Smith v. Isaacs*, 777 S.W.2d 912, 915 (Ky. 1989). Thus, the circuit court was required to determine only "if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief?" *James v. Wilson*, 95 S.W.3d 875, 884 (Ky. App. 2002).

"Because motions to dismiss are decided as a matter of law based on the allegations in the pleadings, discovery is not generally necessary." *City of Taylorsville Ethics Commission v. Trageser*, 604 S.W.3d 305, 312 (Ky. App. 2020). In considering a motion to dismiss, "[w]e are concerned solely with whether the Complaint fails to state a cause of action. We are not concerned with the appellee's ultimate liability: whether after discovery the claimant can withstand a Motion for Summary Judgment, or whether the evidence at trial will be sufficient to withstand a Motion for a Directed Verdict." *Smith*, 777 S.W.2d at

915. Additionally, "[a]n affirmative defense to a claim may be taken advantage of by a motion to dismiss if . . . the defense is shown on the face of the complaint." *Carr v. Texas Eastern Transmission Corp.*, 344 S.W.2d 619, 621 (Ky. 1961).

In ruling on Appellees' CR 12.02(f) motion to dismiss, the circuit court was required to assess Appellants' complaint based on the allegations contained therein; it was not required to allow discovery for the purpose of ascertaining whether Appellants *might* be able to allege additional claims based on a different set of facts than the one alleged. The only statements alleged in Appellants' complaint were those made as part of the arbitration. Appellees asserted that those statements could not sustain a cause of action for defamation because they were privileged.

Accordingly, we find no error with the circuit court's decision to take up the motion prior to allowing Appellants to take discovery on their claims. *See Nave v. Feinberg*, 539 S.W.3d 685, 686 (Ky. App. 2017) (affirming dismissal of claims, including defamation, against attorney because they arose from a judicial proceeding in which the attorney was representing his client); *Rogers v. Luttrell*, 144 S.W.3d 841 (Ky. App. 2004) (affirming dismissal of defamation claim based

solely upon a letter sent by a psychologist to a family court as part of an ongoing custody dispute).[3]

## B. Defamation Claim

In the context of defamation, "[p]rivileged communications . . . are of two kinds; one being an absolute privilege, and the other only a qualified one." *Fortney v. Guzman*, 482 S.W.3d 784, 790 n.2 (Ky. App. 2015) (quoting *Baker v. Clark*, 186 Ky. 816, 218 S.W. 280, 285 (1920)). If the privilege is absolute, false defamatory words will not give rise to a cause of action even if they were maliciously spoken. *Stewart v. Williams*, 309 Ky. 706, 708, 218 S.W.2d 948, 949-50 (1949). In contrast, if the privilege is only qualified, "false and defamatory statements will not give rise to a cause of action unless maliciously uttered." *Id.* at 708, 218 S.W.2d at 950.

In granting Appellees' motion to dismiss Appellants' defamation claim, the circuit court determined that the statements at issue were subject to the judicial statements privilege, meaning that Appellants could not sustain a

---

[3] In contrast, in *Halle v. Banner Industries of N.E., Inc.*, 453 S.W.3d 179 (Ky. App. 2014), we affirmed the denial of a motion to dismiss based on the judicial statements privilege because in addition to the statements made during the court proceedings the complaint and amended complaint alleged the statements were "made outside of, prior to, and after the various judicial proceedings[.]" *Id.* at 189. Here, the only statements alleged were those made during the arbitration.

defamation action based on statements alleged in their complaint.[4]  The judicial

statements privilege has existed in the Commonwealth for well over a century.  *See*

*Smith v. Hodges*, 199 S.W.3d 185, 189-93 (Ky. App. 2005) (recounting the history

of the judicial statements privilege in Kentucky).  The privilege "is rooted in public

policy 'which looks to the free and unfettered administration of justice, though, as

an incidental result, it may, in some instances, afford . . . immunity to the evil-

disposed and malignant slanderer.'"  *Halle*, 453 S.W.3d at 184 (quoting *Schmitt v.*

*Mann*, 291 Ky. 80, 84, 163 S.W.2d 281, 284 (1942)).  While the privilege may

permit some defamatory speech to go unremedied, it is necessary so that

"witnesses in a legal proceeding [might] be able to discuss their views without fear

of a defamation lawsuit."  *Curd v. Kentucky State Bd. of Licensure for Professional*

*Engineers and Land Surveyors*, 433 S.W.3d 291, 298 (Ky. 2014) (quoting

*Deatherage v. State, Examining Bd. of Psychology*, 134 Wash. 2d 131, 136, 948

P.2d 828, 830 (1997)).

---

[4]  "While the [judicial statements] privilege does not outright bar an action, it renders it unsustainable if based exclusively on statements privileged under the law." *Deal v. First and Farmers National Bank, Inc.*, 518 S.W.3d 159, 173 (Ky. App. 2017) (citation omitted).  As it relates to this appeal, however, "the privilege is only applicable to communications and has no application where it is alleged the conduct of the tortfeasor serves as the basis for the claim." *Halle*, 453 S.W.3d at 185.  Count I of Appellants' complaint is based on oral and written statements that Appellees made during the arbitration.  If applicable, the privilege would apply to Count I.  The same is not true, however, with respect to Count II, which alleges that Appellees were negligent and grossly negligent in their review of the Port of Louisville's financial information.  Because Count II is based upon Appellees' conduct, the judicial statements privilege would not apply.  *Id.*

-11-

In order for the judicial statements privilege to take hold, the statement (1) must not only be made "preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding[,]" *Maggard v. Kinney*, 576 S.W.3d 559, 567 (Ky. 2019) (citation omitted), but it also (2) must be "material, pertinent, and relevant," *id.*, to "a proceeding that is contemplated in good faith and under serious consideration." *Rogers*, 144 S.W.3d at 844.

Appellants first argue that, based on certain language contained in the arbitrator's opinion, there is a question of fact as to whether Riverport's breach of contract against them was "contemplated in good faith," making the circuit court's determination that the statements at issue are absolutely protected by the judicial statements privilege premature at best. In making this argument, Appellants incorrectly interpret the meaning of "contemplated in good faith" as employed by the courts in this context. The requirement that the statement relate to a proceeding that is "contemplated in good faith" relates to *when* the statement was made, not to the motivation of the person filing the action.[5] In other words, the judicial statements privilege may cover some statements even where a lawsuit is not

---

[5] *See* RESTATEMENT (SECOND) OF TORTS § 588 cmt. e (1977) (emphasis added) ("*As to communications preliminary to a proposed judicial proceeding*, the rule stated in this Section applies only when the communication has some relation to a proceeding that is actually contemplated in good faith and under serious consideration by the witness or a possible party to the proceeding. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered.").

ultimately brought so long as a lawsuit was seriously being contemplated at the time the statements were made. In this case, the statements were made after suit had already been filed, meaning that it was unnecessary for the circuit court to decide whether Riverport (a nonparty) brought the action in good faith.

Second, Appellants argue that only a qualified privilege would apply if Stratton's statements were not made in good faith, and that for the purposes of a motion to dismiss the circuit court should have presumed the statements were made in bad faith. They point out that any certified public accountant should have been able to determine from Port of Louisville's financial records that it had not underreported its revenue, making Stratton's statements to the contrary so reckless as to rise to the level of malice. However, as explained above, judicial statements which are pertinent and relevant to the subject under inquiry are absolutely privileged "*though it is claimed that they are false and alleged with malice.*" *Maggard*, 576 S.W.3d at 567 (emphasis added) (quoting *Schmitt*, 291 Ky. at 82, 163 S.W.2d at 283).

A key issue in the lawsuit and the arbitration was whether Port of Louisville breached its lease with Riverport. Among other alleged breaches, Riverport claimed that Port of Louisville was required to comply with all applicable state and federal laws, which would necessarily include tax laws, and that Port of Louisville failed to do so. Stratton was retained by Riverport to review

Port of Louisville's financial records and offer an opinion regarding whether Port of Louisville complied with all federal and state tax laws. The statements Appellants claim defamed them concern Stratton's opinion that Port of Louisville substantially underreported its income over a four-year period, which would be a violation of federal and state tax laws. Accordingly, it is beyond dispute that Stratton's statements were related to one of Riverport's breach of contract claims, making his malicious intent (or lack thereof) irrelevant. *Schmitt*, 291 Ky. at 83, 163 S.W.2d at 283 ("We think it requires no argument to demonstrate that the statements made in the affidavit were pertinent and material to the cause, and the question to be determined is, were they absolutely privileged, regardless of whether they were made maliciously or in good faith.").

Next, Appellants argue that the circuit court erred as a matter of law when it concluded that the absolute judicial statements privilege applies in arbitrations. They explain that no appellate court in Kentucky has applied the privilege to arbitrations, and they assert that doing so is inherently problematic because there are no internal policing mechanisms, such as CR 11 sanctions, in arbitrations. Although Appellants are correct that the specific issue of whether the judicial statements privilege applies appears to be an issue of first impression in Kentucky, we cannot discern why arbitrations should be treated differently than other quasi-judicial proceedings in which the privilege has been held to apply.

-14-

Over time, courts in Kentucky have expanded the privilege so that it applies beyond our courts of justice to "all proceedings in which an officer or tribunal exercises judicial functions[,]" including quasi-judicial proceedings. *Morgan & Pottinger, Attorneys, P.S.C. v. Botts*, 348 S.W.3d 599, 602 (Ky. 2011), *overruled on other grounds by Maggard*, 576 S.W.3d 559; *see also Maggard*, 576 S.W.3d at 567 (quoting RESTATEMENT (SECOND) OF TORTS § 587 cmt. f (1977)) ("The emphasis is on judicial (or quasi-judicial) proceedings."). The Kentucky Supreme Court has defined "quasi-judicial" as "[a] term applied to the action, discretion, etc. of public administrative officers or bodies, who are required to investigate facts, or ascertain the existence of facts, hold hearings, weigh evidence, and draw conclusions from them, as a basis for their official action, and exercise discretion of a judicial nature[.]" *Smith v. Fletcher*, 613 S.W.3d 18, 25 (Ky. 2020) (citation omitted).[6] Consistent with this definition, Kentucky's highest Court has applied the judicial statements privilege in an attorney discipline proceeding before

---

[6] Examples of quasi-judicial proceedings include those before the Kentucky State Parole Board, the Kentucky Board of Medical Licensure, and the State Racing Commission. *See, e.g.*, *Belcher v. Kentucky Parole Bd.*, 917 S.W.2d 584, 589 (Ky. App. 1996) (concluding that parole board officials perform quasi-judicial tasks that are functionally comparable to those of judges); *Sangster v. Kentucky Bd. of Medical Licensure*, 454 S.W.3d 854, 862 (Ky. App. 2014) (concluding that board members performed quasi-judicial functions); *Compton v. Romans*, 869 S.W.2d 24, 28 (Ky. 1993) (concluding that the chairman of the State Racing Commission was exercising quasi-judicial powers).

the Kentucky Bar Association, a quasi-judicial proceeding over which the Kentucky Supreme Court has ultimate jurisdiction. *See Botts*, 348 S.W.3d at 602.

Arbitration is an alternative to formal judicial proceedings, which is generally favored in Kentucky. *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 854 (Ky. 2004).[7] While there are differences between arbitration and traditional judicial proceedings, it is nevertheless "an adversarial process with the fundamental components of due process including a hearing with an opportunity to present evidence and cross-examine witnesses, and to have representation by counsel if desired."[8] *Kentucky Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 696 (Ky. 2016). Given these similarities, our Supreme Court has classified arbitrations as "quasi-judicial proceeding[s]." *Id*. at 694 n.3. Likewise, recognizing that the role of the arbitrator is functionally equivalent to that of a judge, this Court has extended the immunity enjoyed by judges to arbitrators.

---

[7] Arbitration has been specifically approved by our Constitution since 1799. *Fite & Warmath Constr. Co., Inc. v. MYS Corp.*, 559 S.W.2d 729, 734-35 (Ky. 1977); KY CONST. § 250.

[8] Many of these fundamental components are included in Kentucky's Uniform Arbitration Act. *See* Kentucky Revised Statutes (KRS) 417.090(2) ("parties are entitled to be heard, to present evidence material to the controversy and to cross-examine witnesses appearing at the hearing"); KRS 417.100 (providing for a party's right to be represented by an attorney); KRS 417.110(1) ("arbitrators may issue subpoenas for the attendance of witnesses and for the production of books, records, documents and other evidence," and arbitrators "shall have the power to administer oaths"); KRS 417.110(2) (arbitrators may permit depositions); KRS 417.120(1) (providing for arbitrator's award to be in writing); KRS 417.160 (providing grounds to vacate an arbitrator's award); KRS 417.170 (providing grounds to modify or correct the arbitrator's award); KRS 417.180 (providing for court to enter a judgment on arbitrator's award and enforcing it as any other judgment); and KRS 417.220 (describing rights to appeal).

*Higdon v. Construction Arbitration Associates, Ltd.*, 71 S.W.3d 131, 132 (Ky. App. 2002). Extending the judicial statements privilege to arbitration is consistent with the Kentucky Supreme Court's classification of arbitrations as quasi-judicial proceedings and a logical extension of *Higdon*. Accordingly, we hold that arbitrations are quasi-judicial proceedings to which the judicial statements privilege applies.[9]

Riverport's action was litigated in Jefferson Circuit Court prior to the parties' agreement to arbitrate. During this period of litigation, Stratton was identified by Riverport as an expert witness it intended to call to testify at trial. Stratton's reports and testimony subsequently took place under the Commercial Arbitration Rules of the American Arbitration Association. As part of this arbitration, the parties, through their counsel, exchanged documents, submitted

---

[9] Our holding that the judicial statements privilege applies in private arbitrations is consistent with the vast majority of our sister jurisdictions. *See Yeung v. Maric*, 232 P.3d 1281, 1283 (Ariz. Ct. App. 2010); *Bushell v. Caterpillar, Inc.*, 683 N.E.2d 1286, 1289 (Ill. App. Ct. 1997); *Moore v. Conliffe*, 871 P.2d 204, 213 (Cal. 1994); *Preston v. O'Rourke*, 811 A.2d 753, 763 (Conn. App. Ct. 2002); *Sturdivant v. Seaboard Serv. Syst., Ltd.*, 459 A.2d 1058, 1059-60 (D.C. 1983); *Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel*, 151 P.3d 732, 753-54 (Haw. 2007); *Kidwell v. General Motors Corp.*, 975 So.2d 503, 505 (Fla. Dist. Ct. App. 2007); *American LifeCare, Inc. v. Wood*, 826 So.2d 646, 650 (La. Ct. App. 2002); *Odyniec v. Schneider*, 588 A.2d 786, 792-93 (Md. 1991); *Kloch v. Ratcliffe*, 375 N.W.2d 916, 919 (Neb. 1985); *Western Mass. Blasting Corp. v. Metropolitan and Cas. Ins. Co.*, 783 A.2d 398, 403 (R.I. 2001); *Henderson v. Wellmann*, 43 S.W.3d 591, 600 (Tex. App. 2001); *Corbin v. Washington Fire & Marine Ins. Co.*, 278 F. Supp. 393 (D. S.C. 1968), *aff'd*, 398 F.2d 543 (4th Cir. 1968); *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 919 (E.D. Va. 2004); *Rolon v. Henneman*, 517 F.3d 140, 145 (2d Cir. 2008); *Martinez v. Hellmich Law Group, P.C.*, 681 F. App'x 323, 326-27 (5th Cir. 2017). *See also* RESTATEMENT (SECOND) OF TORTS § 588 cmt. d (1977) ("Judicial proceedings include all proceedings in which an officer or tribunal exercises judicial functions, as to which see § 585, Comments *c* and *f*. As indicated there, an arbitration proceeding may be included.").

prehearing briefs, and took part in a five-day hearing presided over by the arbitrator, at which time the parties' counsel submitted testimony and documentary evidence subject to objection and cross-examination. Following the hearing, the parties submitted additional briefs. Throughout the process, the arbitrator engaged in judicial functions and ultimately issued his rulings in a nine-page opinion, which was affirmed by the circuit court and then this Court. The arbitration in this case bears all the hallmarks of a quasi-judicial proceeding; accordingly, we find no error with the circuit court's conclusion that the judicial statements privilege applied notwithstanding the fact that the statements at issue were provided during arbitration.

### C. *Expert Witnesses and Judicial Statements Privilege*

Appellants argue that, even if the circuit court was correct in its conclusion than the judicial statements privilege applies in arbitrations generally, it erred in applying the privilege in this case because the statements at issue came from a paid expert. Appellants contend paid experts should be held to a higher standard than ordinary lay witnesses. However, Appellants do not cite any Kentucky law to support this argument. Instead, they refer this Court to cases from other jurisdictions involving *negligence* claims asserted against expert witnesses by the party who hired them. Those, of course, are not the facts here.

Having surveyed the law, we can see no reason to treat the testimony of expert witnesses any differently than the testimony of lay witnesses when it comes to the judicial statements privilege. In Kentucky, the motives of the speaker are irrelevant as it relates to the applicability of an absolute privilege. *Schmitt*, 291 Ky. at 82, 163 S.W.2d at 283. When applicable, the judicial statements privilege even extends to statements made in bad faith or with malice. *Id.* If the privilege can apply to statements made maliciously or in bad faith, it should also apply to statements by expert witnesses regardless of intent.

This issue was previously addressed by the Sixth Circuit in *General Electric Company v. Sargent & Lundy*, 916 F.2d 1119 (6th Cir. 1990). In *General Electric*, the Sixth Circuit applied the privilege to bar claims for injurious falsehood that were based upon statements made by Sargent & Lundy, an engineering firm, and intended to cover up its own liability. In rejecting the same argument made by Appellants here, the Sixth Circuit, applying Kentucky law, stated:

> General Electric and the district court cite no authority for the proposition that the absolute privilege applies only to so-called "independent" consultants. General Electric nevertheless argues that the privilege should not apply since Sargent & Lundy was "engaged in a scheme to cover up its own liability and to shift the responsibility onto innocent parties."
>
> General Electric and the district court, however, misperceive the effect of an absolute privilege. The

> *Restatement*, as well as Kentucky courts, recognizes that a court may not inquire into the motives of the speaker. . . .  The absolute privilege, unlike a qualified privilege, renders the speaker's motives and intent irrelevant in light of the public policy favoring freedom to speak freely and without fear of civil suit and financial hazard.  The application of the privilege therefore cannot turn on whether Sargent & Lundy had an "interest in any eventual litigation," as the district court concluded.

*Id*. at 1128-29 (citations omitted).

Other courts that have addressed this issue have also concluded that the judicial statements privilege applies to expert testimony.[10]  For example, in *MacGregor v. Rutberg*, 478 F.3d 790 (7th Cir. 2007), the Seventh Circuit acknowledged the differences between lay witnesses and expert witnesses and explained why it was necessary for experts to be covered by this absolute privilege:

> Now it is true that the privilege is especially designed for the protection and encouragement of disinterested lay witnesses.  Since they have no stake in the case and cannot be paid more than a nominal fee for testifying, they would be highly reluctant to testify if the

---

[10]  *See, e.g.*, *Mattco Forge, Inc. v. Arthur Young & Co.*, 5 Cal. App. 4th 392, 405 (Cal. Ct. App. 1992) (stating that the privilege protects adverse witnesses from suit by opposing parties); *Darragh v. Superior Court In and For County of Maricopa*, 900 P.2d 1215, 1217 (Ariz. Ct. App. 1995) (concluding that expert's appraisals and testimony were absolutely privileged); *Aequitron Medical, Inc. v. Dyro*, 999 F. Supp. 294, 298-99 (E.D.N.Y. 1998) (recognizing that retained experts act as an agent for the attorney who hired them and granting summary judgment dismissing defamation claims against retained experts because the statements at issue were absolutely privileged); *Blackwell v. Davis*, 874 S.W.2d 950, 951 (Tex. App. 1994) (recognizing that the privilege applies to the opinions of expert witnesses in judicial proceedings); *Churchill v. WFA Econometrics Corp.*, 655 N.W.2d 505, 509 (Wis. Ct. App. 2002) (dismissing defamation action based upon absolutely privileged statements contained in an expert's letter advising a litigant's attorney on a matter in dispute); *ITT Telecom Products Corp. v. Dooley*, 214 Cal. App. 3d 307, 317 (Cal. Ct. App. 1989) (extending application of the privilege to consulting expert witness).

-20-

> threat of a defamation suit hung over their heads. It
> would be cruel to force them by testifying to assume that
> risk. Expert witnesses, in contrast, could be paid to
> assume the risk. Nevertheless they are not excepted from
> the privilege . . . and that is sensible. Litigation is costly
> enough without judges' making it more so by throwing
> open the door to defamation suits against expert
> witnesses. That would not only tend to turn one case into
> two or more cases (depending on the number of expert
> witnesses), but also drive-up expert witnesses' fees;
> expert witnesses would demand as part of their fee for
> testifying compensation for assuming the risk of being
> sued because of what they testified to.

*Id*. at 792 (citations omitted).

We agree with the Seventh Circuit's reasoning. Any benefit of excepting expert witnesses from the judicial statements privilege would be far outweighed by the additional burdens it would place on those expert witnesses, the parties themselves, and the court system generally.

This does not mean, however, that expert witnesses are free to testify without consequences. While the judicial statements privilege serves as a shield in civil defamation cases, as in the present case, it does not offer protection in other contexts. For example, in *Curd*, 433 S.W.3d 291, a licensed land surveyor sought review of his license suspension based on a finding by the regulating agency that his expert testimony in a prior judicial proceeding was dishonest and misleading. Relying on the judicial statements privilege, the surveyor argued that since the statements at issue were made in a judicial proceeding, they could not serve as a

basis for a disciplinary action. Although the Supreme Court recognized that the judicial statements privilege was necessary to allow witnesses to "discuss their views without fear of a defamation lawsuit[,]" it rejected an extension of the privilege to immunize testifying experts from administrative discipline. *Id.* at 298.

Many expert witnesses such as medical doctors, dentists, lawyers, appraisers, surveyors, real estate agents, counselors, and public accountants, like Stratton, must be licensed to practice their trades. While Appellants may not be able to receive money damages in the context of an administrative disciplinary action, their objectives in pursuing truth and holding Stratton accountable for his alleged malfeasance may be addressed through other processes notwithstanding the fact that the judicial statements privilege bars this civil defamation claim.

### D. Professional Malfeasance Claim

Appellants' final claim against Appellees is one seeking damages for professional malfeasance. A professional malfeasance or malpractice claim is a tort-based claim that sounds in negligence. "The elements of a negligence claim are (1) a legally-cognizable duty, (2) a breach of that duty, (3) causation linking the breach to an injury, and (4) damages." *Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016). While the other three elements are factual questions, the element of "[d]uty presents a question of law[.]" *Id.*

Here, the circuit court's dismissal of Appellants' professional malfeasance claim was predicated on its conclusion that Stratton and his accounting firm, experts retained by Riverport, a party adverse to Port of Louisville, did not owe Port of Louisville a duty of professional care. Appellants argue that the circuit court erred in this regard and assert that, as a testifying expert, Stratton owed them a duty of care, which he breached by rendering indefensible testimony that was not supported by sound accounting methods.

In Kentucky, to establish a claim for professional negligence, the plaintiff must establish the existence of a contractual relationship between himself and the professional. Alternatively, the plaintiff may establish that he has a reasonable expectation that the professional is working for his benefit. *Pete v. Anderson*, 413 S.W.3d 291, 296 (Ky. 2013). The professional owes a duty of care to those parties "who are intended to benefit from his or her services[.]" *Id*. at 297. We cannot conclude that the Port of Louisville could reasonably expect that it would benefit from Stratton's services as an expert witness.

The Kentucky Supreme Court's opinion in *Seiller*, 610 S.W.3d 188, is illustrative in this regard. That case involved a legal malpractice claim asserted by a party against opposing counsel in a lawsuit. In *Seiller*, RLB Properties, Ltd. ("RLB") filed an action against the law firm of Seiller Waterman, LLC and three of its attorneys (collectively the "Firm") based upon their allegedly wrongful acts

undertaken on behalf of the firm's clients. Specifically, RLB challenged the filing of an invalid lien against commercial property it owned and asserted, among other claims, a negligence claim against the Firm. The trial court dismissed the negligence claim, and this Court affirmed. The Supreme Court granted discretionary review to address whether the trial court and this Court erred by concluding that a litigant may not assert a negligence claim against the attorney who represented that litigant's former adversary. The Kentucky Supreme Court affirmed the dismissal, concluding that "[a]s a matter of law, a party such as RLB is not entitled to assert a negligence claim against the legal counsel who represented an opposing party in prior litigation, because no duty flows from that counsel to their client's adversary." *Id.* at 201. The Court reasoned that "[n]eedless to say, an adverse party in a lawsuit is not the intended beneficiary of the work an attorney performs on behalf of his or her own client." *Id.* The Court further recognized that "allow[ing] a party to bring a negligence action against the adverse attorney would have a chilling effect on the number of meritorious claims filed and this cannot be tolerated under our system." *Id.* (quoting *Hill v. Willmott*, 561 S.W.2d 331, 335 (Ky. App. 1978)).

We can appreciate no reason why the holding in *Seiller* should not be extended to cover expert witnesses, who are most often selected by and work at the direction of counsel. Nothing in the record in this case indicates that Appellants

contracted with, retained, or were otherwise intended to benefit from Stratton's work as an expert witness. To the contrary, Appellants were apprised of precisely the opposite. Stratton was identified as having been retained on behalf of the Port of Louisville's adversary, Riverport, and Stratton provided expert opinions that were used against Appellants in the arbitration.

Having no basis to claim that they retained Stratton or were intended to benefit from his work, Appellants rely upon the "universal duty owed by all to all" to argue that Appellees owed them a duty. This universal duty was first expressed in *Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell*, 736 S.W.2d 328, 330 (Ky. 1987), *abrogated on other grounds by DeStock No. 14, Inc. v. Logsdon*, 993 S.W.2d 952 (Ky. 1999), and is not as boundless as the name implies. *T&M Jewelry, Inc. v. Hicks ex rel. Hicks*, 189 S.W.3d 526, 531 (Ky. 2006). "*Grayson* is cited often by parties advocating a theory of liability or a cause of action where none previously existed and legal authority is otherwise lacking." *Jenkins v. Best*, 250 S.W.3d 680, 689 (Ky. App. 2007) (quoting *James*, 95 S.W.3d at 891). "In other words, parties turn to *Grayson*'s sweeping statement of 'universal duty' where the facts of their case do not support a duty based on recognized legal relationships." *Id*. That is precisely what Appellants advocate here. However, as explained above, our case law on professional negligence claims is clear that no duty exists in the absence of a contractual relationship

-25-

between the parties or a reasonable expectation that the professional will benefit the complaining party. Appellants cannot establish either one.

Like the majority of our sister courts, we hold that an expert witness in a judicial or quasi-judicial proceeding owes no duty of care to the adverse party.[11] Since Appellees owed no duty of care to Appellants, the circuit court did not err in dismissing Appellants' professional malfeasance claim as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, we affirm the Jefferson Circuit Court's opinion and order dismissing Appellants' complaint.

CLAYTON, CHIEF JUDGE, CONCURS.

COMBS, JUDGE, CONCURS AND FILES SEPARATE OPINION.

---

[11] *See, e.g.*, *Block v. Sacramento Clinical Labs, Inc.*, 131 Cal. App. 3d 386, 393-94 (Cal. Ct. App. 1982) (affirming summary judgment dismissing criminal defendant's professional negligence claims against prosecution's expert); *Maiden v. Rozwood*, 597 N.W.2d 817, 830 (Mich. 1999) (concluding that medical examiner who testified for the state as an expert witness owed no duty to the adverse party); *Lewis v. Swenson*, 617 P.2d 69, 74 (Ariz. Ct. App. 1980) (stating that appellees, including an expert witness, owed a duty to the court, and breach of that duty would not give rise to a cause of action in tort by the adverse party); *Feild v. Graffagnino*, 514 F. Supp. 2d 1036, 1046 (W.D. Tenn. 2007) ("Expert witnesses do not owe any duty to an adverse party; instead, they owe a duty to the Court to testify truthfully and honestly."); *Kahn v. Burman*, 673 F. Supp. 210, 214 (E.D. Mich. 1987) (granting motion to dismiss negligence claim against expert witness because expert witness owed no legal duty to adverse litigant); *Williams v. National Medical Services, Inc.*, 400 F.3d 1102, 1104 (8th Cir. 2005) (affirming dismissal of negligence claims against expert witnesses on ground that the experts owed the plaintiff no duty of care); *Murphy v. A.A. Mathews*, 841 S.W.2d 671, 682 n.11 (Mo. 1992) (*en banc*) (concluding that, while witness immunity did not apply to bar negligence claims by parties against their retained experts, the holding "would not subject adverse expert witnesses to malpractice liability because . . . the expert owes no professional duty to the adversary.").

-26-

COMBS, JUDGE, CONCURRING:  It is disconcerting to have to admit that some wrongs exist -- indeed, manage to flourish -- without a remedy to redress them.  Such a realization undermines our fundamental conviction that "right" will prevail, a concept that we as a society have cultivated from the days of King Arthur and Camelot, a theme that weaves its way all the way through children's literature to our legal jurisprudence.

However, in the case before us, we are compelled to acknowledge that we may have to tolerate the patently unsavory and unjust prospect of affording "immunity to the evil-disposed and malignant slanderer."  *Halle*, 453 S.W.3d at 184.

We must be cognizant of the fact that we are extending the judicial statements privilege to the quasi-judicial forum of arbitration -- and properly so -- as thoroughly analyzed in the majority Opinion.  But in so ruling in this case of first impression in Kentucky, we are inescapably expanding the opportunity for the potential mischief that arguably defamatory testimony may elude accountability or be susceptible of legal remedy.  Relying on *Schmitt*, 291 Ky. at 82, 163 S.W.2d at 283, we announce in this Opinion:  "When applicable, the judicial statements privilege even extends to statements made in bad faith or with malice."  Incredible!  But this is a legal reality that once again highlights the disillusionment of having to

acknowledge the occasional chasm between the letter of the law and the spirit of justice.

There can be no doubt that Truth has become an endangered species in our public discourse in virtually every forum in which we debate matters of public policy. Indeed, in this Opinion, we have upheld the judicial statements privilege on that very ground of necessity, reciting that the privilege is "rooted in public policy . . . ." *Halle*, 453 S.W.3d at 184.

The merits of this claim of defamation will not be reached in this case, and I claim no insight as to the viability of the underlying claims asserted in the complaint. As was amply and ably set forth in the majority Opinion, we are following the law as we must in adhering to Supreme Court precedent. SCR[12] 1.030(8)(a). The only remedies currently available to a putative victim of defamation in a judicial or quasi-judicial forum are essentially administrative in nature -- such as accountability to professional boards of licensure, oversight, and discipline.

However, the Supreme Court ultimately could fashion a judicial remedy to bolster candor to the tribunal to include candor **within** the tribunal under pain of contempt if indeed true defamation or malicious testimony can be demonstrated. That eventuality is wholly speculative in nature and is beyond our

---

[12] Kentucky Supreme Court Rules.

purview. But it clearly is an affront to the belief that "right" will prevail for mendacity to claim sanctuary in the halls of justice.

BRIEFS FOR APPELLANTS:

Kenneth A. Bohnert
F. Chris Gorman
Edward F. Busch
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLANTS:

Edward F. Busch
Louisville, Kentucky

BRIEF FOR APPELLEES:

Mark S. Fenzel
Augustus S. Herbert
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEES:

Augustus S. Herbert
Louisville, Kentucky